SUNQUEST PROPERTIES, INC.                                                    PLAINTIFFS
AND CARRIAGE HOUSE APARTMENTS PARTNERSHIP

V.                                            CIVIL ACTION NO. 1:08cv687-LTS-RHW

NATIONWIDE PROPERTY AND CASUALTY COMPANY                    DEFENDANTS
AND JOHN DOES 1-5

## ORDER

     Plaintiffs have filed a [28] Motion for Partial Summary Judgment to Compel Appraisal.
Defendant has [29] responded, and Plaintiffs [31] replied.  The opposing parties accuse the other
of getting the cart before the horse, but after reading the motion papers the Court is unsure if
those are even the forms of transportation involved here.  The Court is certain that these modes
of proceeding have been utilized incorrectly.  This case presents in part an issue of the
interpretation of insurance contract provisions, which can not be resolved in a legal vacuum
outside the factual circumstances presented.

     Defendant insured an apartment complex known as Carriage House Apartments located at
1625 Martin Bluff Rd. in Gautier, Mississippi, under policy No. 63BP139-742-0004.  At the time
of Hurricane Katrina, the apartments were owned by Carriage House Apartments Partnership and
managed by Sunquest Properties, Inc..  Hurricane Katrina caused damage to the covered premises
on August 29, 2005.

     The insurance policy contains the following provision:

    E.  PROPERTY LOSS CONDITIONS

    * * *

       2.  Appraisal

       If we and you disagree on the amount of loss, either may make written
       demand for an appraisal of the loss.  In this event, each party will select a
       competent and impartial appraiser.  The two appraisers will select an
       umpire.  If they cannot agree, either may request that selection be made by
       a judge of a court having jurisdiction.  The appraisers will state separately
       the amount of loss.  If they fail to agree, they will submit their differences

to the umpire.  A decision agreed to by any two will be binding.  Each party will:

a.  Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Almost three years following the hurricane, Plaintiffs submitted a letter to Nationwide, dated June 20, 2008, which reads in pertinent part:

. . . Because time is growing short here to do anything other than a lawsuit to settle this, we are asking Nationwide to voluntarily agree to enter into the Appraisal Process with us to let 3rd parties determine whether or not the amount paid was the proper amount for the *wind portion of our loss*.  It is our understanding that Nationwide has agreed to do this before on other losses *where both wind and flood was* [sic] *involved* and we see no reason that this could not be done again on our . . . claim[], given that there was [sic] a lot of inspections and photos taken to *document what was flood versus what was wind*.  We recognize that since we had to sell the property "as is" after the storm, that we are only entitled to the Actual Cash Value of this Loss.  We accept that premise.

(Emphasis supplied)

On July 21, 2008, Plaintiffs again wrote Nationwide.  The opening paragraph states:

At 5:26PM on June 19th, Nationwide received our previous, June 20th, letter . . . requesting the appraisal process to *resolve a pending dispute over the amount of wind loss* to [the covered property].

(Emphasis supplied)

Nationwide responded to these letters by correspondence dated August 21, 2008.  Addressing the above points, Nationwide wrote:

. . . Nationwide has considered your request and, in accordance with Section E.2. of the above-referenced polic[y] . . .  will agree to an appraisal of the amount of the *covered* loss to the above-referenced propert[y].  In accordance with applicable law, Nationwide will not agree to submit any coverage issues for appraisal.

The issues Nationwide will not agree to submit for appraisal include, but

are not limited to, a determination of whether any damage was caused by a covered peril, or the extent of damage caused by a covered peril. In accordance with applicable law and Policy provisions, Nationwide will agree to an appraisal of the cost to repair or replace those items of damage that Nationwide agrees are *covered* under the Policy.

More specifically, Nationwide will agree to an appraisal limited to the actual cash value of the damage to those portions of the structures identified on the damage estimates previously delivered to you by Nationwide. If you would like an additional copy of the damage estimates, I will provide them at your request. Please confirm in writing your agreement to limit the appraisal to the actual cash value of the items of damage identified in Nationwide's damage estimates. If you do not agree with the scope of damage outlined on those estimates, we respectfully request that you identify for us, in writing, any additional scope of damage not included on our estimates that you are claiming is due to a *Covered Cause of Loss*.

Nationwide reserves its right to withdraw from or decline to participate in the appraisal process if you submit for appraisal, or the appraisers undertake to appraise, any items of damage that Nationwide *does not agree are covered* under the terms and conditions of the subject Policy. Nationwide further reserves all of the rights and defenses under the Policy, including the right to deny your claim.

(Emphasis supplied)

Plaintiffs argue in their reply that they are not asking the appraisers to determine causation of their loss. Yet this representation is belied by the correspondence quoted above as well as the following language found in Plaintiffs' original memorandum:

The Defendant's attempt to confuse causation determinations by appraisers with final determinations of coverage is misplaced. The insurance industry forms used in appraisal typically do require the appraisers to determine the amount of loss caused by a particular peril or event, but those appraisals never decide coverage. Applying their knowledge and experience to determine what damage they believe was caused by a particular event does not preclude a revisit of the issue of coverage by the Court. The appraisers can appraise the entire loss and can also be instructed to break down their opinion into various elements of the loss. . . ¶ The contract is clear, and the time-honored process of appraising the loss and the determining [sic] coverage is sound.

Plaintiffs then suggest that the Court structure the appraisal process.

The Court finds it difficult to differentiate between cause(s) of the loss and deciding

coverage. If a peril is covered and another is excluded from coverage under an insurance policy, cause has everything to do with coverage, and vice versa. The Court agrees that the contract is clear, but is not going to insert itself into this controversy surrounding appraisal until it is convinced that it should.

There appears to be no dispute that appraisers have no power to determine the cause of damage or assess liability. It is here that both parties miss the point. Which party misses it more is insignificant. Prior to this litigation, both seemed intent on adding language or using a process that is not a part of the appraisal provision that is pivotal to the instant motion. If that language or process is included, then the meaning of the provision is erroneously changed. In essence, the exchanges between the parties in 2008 were saying the same things in different ways, with the result being a mutual misinterpretation of the appraisal provision. The policy plainly deals with a dispute over the amount of *the* loss, not a covered loss or the cause of the damage. That is the primary reason Defendant is in a position to still deny the claim.

Where does that leave the appraisal process? The obvious answer: not in the Court's hands. There is nothing for the Court to structure; that is accomplished by the policy. Under the policy's express terms and the exchanges between the parties, the appraisal provision has not been properly triggered or followed. The only matter appropriate for the appraisal process is the determination of the total loss, without any regard to causation or coverage.

If done correctly, appraisal may benefit the ultimate resolution of this action. Once the total amount of the loss is established, then a fact-finding allocation between covered and excluded losses can be made. There would be no need to revisit the amount of the loss, and the only issue to be visited is the extent of the coverage to that amount, i.e., the amount of covered damage and the amount caused by an excluded peril.

The Court expresses no opinion on whether conducting appraisal consistent with the policy language is an option at this stage. The only issue before the Court is whether Plaintiffs' motion to compel appraisal has merit. Under the circumstances presented in the record, it does not.

Accordingly, **IT IS ORDERED**:

Plaintiffs' [28] Motion for Partial Summary Judgment to Compel Appraisal is **DENIED**.

**SO ORDERED** this the 8th day of June, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE

4