IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC. and
CARRIAGE HOUSE APARTMENTS
PARTNERSHIP,                                                                             PLAINTIFFS

v.                                                                          Civil Action No. 1:08-CV-687-LTS-RHW

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-5,                                                                       DEFENDANTS

**REPLY IN SUPPORT OF NATIONWIDE'S MOTION TO STRIKE LEWIS O'LEARY
AS PLAINTIFFS' "COMPETENT AND IMPARTIAL" APPRAISER**

Nationwide Property and Casualty Insurance Company ("Nationwide") hereby files this Reply in Support of its Motion to Strike Lewis O'Leary as Plaintiffs' "Competent and Impartial" Appraiser and, in support hereof, states:

1.    Plaintiffs' fundamental misapprehension of the appraisal clause's express requirement of appraiser impartiality is manifested not only by their selection of Mr. O'Leary, but also by their unavailing attempt to defend this invalid choice. Critically, ***Plaintiffs do not and cannot contest*** that Mr. O'Leary has collected upwards of $50,000 in fees from Plaintiffs for over two years of deep strategic involvement as a claim consultant and litigation expert advancing the very claim for which Plaintiffs now seek to have him conduct an appraisal. Contrary to Plaintiffs' baseless accusations, Nationwide asks this Court to intervene not for purposes of delay, but to protect its right under the contract not to be prejudiced by a partisan appraiser such as Mr. O'Leary, and to ensure that a valid and enforceable appraisal process takes place that does not waste the time and money of the parties and this Court.

2.    Unable to change the facts, Plaintiffs engage in a vain attempt to blunt their dispositive effect. Plaintiffs advance four primary points, each of which succeeds only in confirming Mr. O'Leary's incapacity to serve as an impartial appraiser in this matter. First,

Plaintiffs argue the logically inverted proposition that Mr. O'Leary's collection of over $50,000 in fees for pre-appraisal work in advancing Plaintiffs' claim and litigation strategy does not disqualify him because "the Policy itself provides that each side will pay its chosen appraiser." (*See* Nov. 6, 2009 Mem. in Opp to Mot. to Strike Lewis O'Leary at 3 [Dkt. 176].) Second, Plaintiffs proffer that Mr. O'Leary's own self-serving, canned description of himself as being "considered fiercely independent by the industry" somehow proves his impartiality. Third, Plaintiffs take the untenable position that Mr. O'Leary's relationship with Plaintiffs' counsel does not render him impartial because he was involved in advancing their claim even before their current counsel was retained, and because he had recommended their counsel be brought into the case. Finally, Plaintiffs offer a muddled case law analysis that ignores both the clear terms of the insurance contract governing this dispute and Mississippi law, misreads persuasive precedent from other jurisdictions, and in fact sets forth cases that further support Nationwide's contentions. In sum, none of the arguments offered by Plaintiffs overcome the simple facts and clear contract language which establish Mr. O'Leary's unfitness to serve as an "impartial" appraiser.

I.   **MR. O'LEARY'S COLLECTION OF OVER $50,000 IN FEES FOR PRE-APPRAISAL WORK ADVANCING PLAINTIFFS' CLAIM AND DEVELOPING LEGAL STRATEGY IS BOTH UNDISPUTED AND DISPOSITIVE.**

3.   Plaintiffs do not and cannot contest Nationwide's factual showing regarding Mr. O'Leary's involvement in their claim. It is thus ***undisputed*** that, *inter alia*, Mr. O'Leary has:

- collected upwards of $50,000 in fees from Plaintiffs for his pre-appraisal work in advancing the very claims for which they seek appraisal;

- had deep and ongoing service for over two years as a consultant to Plaintiffs on this very claim, and Plaintiffs have given no indication, let alone evidence, that he does not continue to serve in that capacity;

- been designated and paid to serve as Plaintiffs' litigation expert in causation and valuation, and would continue to serve in that role even as the appraisal process goes forward; and

- reached opinions on the scope (and cause) of the loss outside of the appraisal process and without even considering an enormous amount of information contained in reports created and photographs taken at Nationwide's request.

(*See* Oct. 22, 2009 Mem. in Supp. of Mot. to Strike O'Leary [Dkt. 132].)  The only question, then, is whether, in light of the substantial financial benefit he has reaped and continues to receive for his deep, ongoing strategic role in advancing Plaintiffs' claim, Mr. O'Leary can serve as an impartial adjuster within the express terms of the appraisal clause of Plaintiffs' policy.  As Nationwide has amply demonstrated, the answer to this question is "No."

4. The appraisal clause governing this dispute unambiguously requires that the appraisers appointed by the parties be "impartial."  (*See* Nationwide Business Provider Policy, Form BPP-0006 (1-0294), Certified Business Provider Policy 63 BP 139 742 0004 § E.2 at NW-2SUN000102 (Ex.1).)[1]  It is that provision, moreover, not some generally applicable statutory or judicially derived standard, that governs Mr. O'Leary's fitness as a matter of Mississippi law. *See Munn v. National Fire Ins. Co. of Hartford*, 115 So. 2d 54, 55 (Miss. 1959) (applying terms of "[t]he provision in the policy for the appointment of appraisers"); *Kuehn v. State Farm Fire & Cas. Co.*, No. 1:08CV577 LTS-RHW, 2009 WL 2567485, at *7 (S.D. Miss. Aug. 17, 2009) ("An appraisal provision embedded in a property insurance contract is valid and enforceable in accordance with its terms.").  The answer to the critical question of what "impartial" means is clear: all relevant sources support an interpretation of "impartial" as a robust standard that forbids both pecuniary interest beyond mere payment for service as an appraiser and any similar connections that raise a substantial possibility of unscientific preference for either party.  *See, e.g.*, Black's Law Dictionary (8th ed. 2004) (defining "impartial" as "[u]nbiased; disinterested"); *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d

---

[1] Exhibits 1-11 referenced herein are attached to the October 22, 2009 Nationwide Property and Casualty Insurance Company's Motion to Strike Lewis O'Leary as Plaintiffs' "Competent and Impartial" Appraiser [Dkt. 131.

Cir. 1984) (reasoning that "evident partiality" connotes a standard somewhere between mere "appearance of bias" and "proof of actual bias," and finding "evident partiality" even absent evidence of "actual bias" where arbitrator's father was president of union involved in arbitrated dispute); *see also Craig v. Barber*, 524 So. 2d 974, 978 (Miss. 1988) (describing "evident partiality" as occurring where, viewed objectively, an arbitrator's state of mind is "reasonably likely to render him unable to proceed impartially in a particular case," and where that person possesses "a preconceived opinion or a predisposition toward a party to the arbitration").

5. That Mr. O'Leary's heavy strategic involvement in Plaintiffs' claim submission and legal strategy, and his financial interest in advancing Plaintiffs' claim, render him unable to serve as an "impartial" appraiser is confirmed by the fact that he would fail even under the "evident partiality" standard. This standard is often applied by statute in the analogous arbitration context, and it sets an even higher bar for establishing unfitness than does the impartiality requirement in the contract at issue. In particular, the Supreme Court of the United States has found "evident partiality" to exist where "[t]he relationship involved *fees of about $12,000* paid to the arbitrator by the party, extended over a period of four or five years, *ended only one year before the arbitration*, and *even included the rendering of services on the very projects involved in the arbitration before him*." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 285 (5th Cir.), *cert. denied*, 551 U.S. 1114 (2007) (emphasis added) (citing and describing *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968)). In the case at bar, by comparison, the pre-appraisal relationship involves *fees of at least $51,533 and as much as $100,000* paid to Mr. O'Leary by Plaintiffs, extended over a period of approximately two-and-a-half years, is *ongoing even as the appraisal is set to take place*, and likewise "even include[s] the rendering of services on the very projects involved in the [case] before him"—*services that will presumably continue even while the appraisal is itself conducted*. (*See* Nationwide Memo. at 10.)

II. **PLAINTIFFS' EFFORTS TO ESTABLISH A GENERAL RULE OF LAW GOVERNING APPRAISER NEUTRALITY ARE CONTRARY TO MISSISSIPPI LAW AND WOULD NOT RENDER MR. O'LEARY IMPARTIAL.**

6.  Plaintiffs seek to avoid the Court precluding Mr. O'Leary from serving as their appraiser by advancing an unsustainable reading of the contract and misinterpretation of non-Mississippi caselaw. First, despite the fact that its presence cuts directly against their argument, Plaintiffs highlight the fact that their insurance policy contemplates that the parties will pay the appraiser whom they have chosen. That the contract expressly provides that the parties will pay their designated appraisers *for work done on the appraisal only* makes clear that any *non-appraisal* payments related to the claim for which appraisal is sought are not authorized under the impartiality requirement. As Plaintiffs accurately quote, the policy reads:

> Each party will:
> 
> a. *Pay its chosen appraiser*; and
> b. Bear the *other expenses of the appraisal* and umpire equally.

(Policy § E.2 at NW-2SUN000102 (emphasis added); Pls.' Opp. at 2.) It is clear, then, that the payments contemplated in the contract are for "expenses of the appraisal." Plaintiffs have it exactly backwards when they suggest that this clause somehow cures or excuses the undeniable fact that Mr. O'Leary has been paid over $50,000 by Plaintiffs, not for work on the still-pending appraisal, but for his consultant and expert work advancing Plaintiffs' claim before and during litigation.

7.  Second, rather than offering a better understanding of what the term "impartial" means in the contract at issue – which is the critical inquiry under Mississippi law – Plaintiffs cite selectively to non-Mississippi cases involving appraisal in a last-ditch effort to establish some general rule of law regarding appraiser neutrality. *See Schipper & Block, Inc. v. Carson Pirie Scott & Co.*, 256 N.E.2d 854, 857 (Ill. App. Ct. 1970) ("We are not concerned herein with

the general law relating to disqualification of appraisers, but with the special qualifications of the appraisers set forth in the [governing contract].") Citing a handful of cases, Plaintiffs make the bald and unsupportable assertion that "[m]ost jurisdictions do not set the extremely high, virtually impossible bar that the Defendant would like to set here." (Pls.' Opp at 9.) In fact, as demonstrated below, even the cases Plaintiffs have cherry-picked make clear that, under any acceptable standard of neutrality, Mr. O'Leary is not capable of presiding over a claim for which he has been paid tens of thousands of dollars to advance. Thus, even were the cases that Plaintiffs cite somehow determinative of the neutrality standard to be applied, rather than the contract language made enforceable under Mississippi law, Mr. O'Leary's manifest partiality ultimately renders this distinction unimportant. In this light, far from Nationwide seeking to set an "extremely high, virtually impossible bar," it is Plaintiffs who ask this Court to read the impartiality requirement right out of the contract.

8. The primary case offered by Plaintiffs, *Auto-Owners Insurance Company v. Allied Adjusters & Appraisers, Inc.*, 605 N.W.2d 685, 689-90 (Mich. Ct. App. 1999), only confirms Mr. O'Leary's unfitness. To begin, the notion that this decision establishes some general legal principle governing appraisal that has some bearing on the contract at issue here is simply unsupportable. The case concerned the interpretation of a Michigan state statute. The statutory scheme at issue there was specifically designed to include the use of appraisers who "may be biased toward the party who hires and pays [them]." *See id.* at 689. But to the extent that the case has any bearing on interpreting the Nationwide policy's appraisal clause, it is readily apparent that *Auto-Owners* completely undermines Plaintiffs' position. The court explicitly relied on the distinction made by the Michigan statute at issue between the terms "independent"—a requirement applied by the statute to appraisers—and "impartial"—the requirement applicable to umpires. *See id.* at 688-89. Basing its holding on that distinction, the court reasoned that ***the impartiality requirement actually set a significantly higher bar than the***

*independence requirement*: to be "impartial" required that the selected person "may not favor either party" and instead "must serve only equity, fairness, and justice." *Id.* at 689. In other words, the Michigan Court of Appeals considered a distinction similar to that posed by this Court—namely, that "an 'impartial' appraiser ... may not be the same as a disinterested one," *Sunquest Properties Inc. v. Nationwide Property & Casualty Co.*, No. 1:08CV687-LTS-RHW, 2009 WL 2567222, at *2 (Aug. 18, 2009)—and found that "impartial" standard entails a more stringent standard. The case therefore stands for the exact opposite proposition from that advanced by Plaintiffs. Whereas the Michigan statute in *Auto-Owners* required that **umpires** be "impartial" while appraisers needed only be "independent," the contract at issue here requires that the **appraisers** selected by each party meet the more robust impartiality standard.

9.    Neither do any of the other cases raised by Plaintiffs—none of which issue from Mississippi or address a clause requiring impartiality, let alone a situation in which the proposed appraiser has been paid substantial sums of money for work in advancing the very claim for which appraisal was sought—in any way support Plaintiffs' position. In *Galvis v. Allstate Ins. Co.*, 721 So. 2d 421 (Fla. 3d DCA 1998), a Florida court held that an appraiser may be "disinterested" or "independent" despite receiving compensation contingent upon the nominating party's recovery, so long as that fact is disclosed. Not only did that court fail to address the "impartial" standard at issue here, but its interpretation of "disinterested" is itself contrary to more rigorous state court readings of that term in other states, including Mississippi. *See Hill v. Thompson*, 564 So. 2d 1, 13 (Miss. 1989) (holding that appraisers with pecuniary interest in outcome of appraisal were not "disinterested" as required by contract clause at issue). In *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143 (Tx. Ct. App. 2002), the court addressed a situation in which the "evidence involve[d] an arm's length business relationship, which is unrelated to this specific claim, between various State Farm companies and [the proffered appraiser's employer]." That court found that, unlike Mr. O'Leary's ongoing role in advancing

Plaintiffs' claim, mere allegations of an ongoing business relationship between the appraiser's employer and the proffering party *that were unrelated to the claim at issue* did not constitute "evidence that the appraiser performed 'some act or conduct tending to exhibit his serving the company's interest as a partisan would.'" *Id.* at 144 (quoting *American Central Ins. Co. v. Terry*, 298 S.W. 658, 662 (Tx. Ct. App. 1927)) (emphasis added).

10. The remaining cases raised by Plaintiffs underscore that, even under the less stringently interpreted statutory standards of other states, Mr. O'Leary falls far short of the bar of impartiality. *Linford Lounge, Inc. v. Michigan Based Property Insurance Association*, 259 N.W. 2d 201, 202-203 (Mich. Ct. App. 1977), was decided under the same Michigan statutory framework as the *Auto-Owners* case, and thus addressed a lower standard than the heightened impartiality standard found in Plaintiffs' policy. Moreover, even applying that less stringent standard, the court expressly relied on the fact that the pre-appraisal relationship at issue there was terminated when the person at issue was named an appraiser. *Id.* at 202 n.5. Here, by contrast, all indications are that Mr. O'Leary has continued to be paid by Plaintiffs for "evaluating" damage, to adopt Plaintiffs' euphemism for Mr. O'Leary's consultant and litigation expert services, just as he was prior to the initiation of litigation and the appraisal process. (*See* Pls.' Opp. at 3 (explaining that Mr. O'Leary has been and continues to be paid to "evaluat[e]" damage to the property).) Finally, the decision in *Tiger Fibers, L.L.C. v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712 (E.D. Va. 2008), is equally unhelpful to Plaintiffs' position. There, the court held that two proffered appraisers met a state statutory requirement that they be disinterested. While the first had an extensive history of working only for insurers, he was not disqualified where the "only interest [he] ha[d] in the instant matter [was] to perform the independent appraisal." *Id.* at 718. In the case of the second, the court made the careful distinction that, although he was an employee of a company that had originally prepared a damages report in the same matter, he himself "ha[d] not previously provided any services

specifically to [the nominating party], nor did he assist [his employer] in any way in its preparation of [its] damages report" in that case. *Id.* at 715. That Mr. O'Leary has received substantial financial benefit for work performed to advance the very claim for which appraisal is sought, then, places him squarely on the unfit side of both of the critical distinctions made by the *Tiger Fibers* court.

11.    Tellingly, Plaintiffs' only attempt at actually addressing caselaw cited by Nationwide exposes their fundamental misunderstanding of the nature of Mississippi law in this area. Plaintiffs seek to undermine the California decisions cited by Nationwide by arguing that, "because the California Code of Civil Procedure describes appraisers as arbitrators," California somehow has a "unique … jurisprudence which is not the law of Mississippi." (Pls.' Opp. at 8.) "In Mississippi," Plaintiffs assert, "it is clear that appraisal is not treated as arbitration." (*Id.* at 8-9 (citing *Munn*, 115 So. 2d at 56-57).) This overbroad statement distorts the Mississippi Supreme Court's *Munn* opinion. In fact, the Court there distinguished arbitration—which "presupposes the existence of a dispute or controversy to be tried and determined in a quasi judicial manner"—from appraisal—"an agreed method of ascertaining value or amount of damage"—in terms of the scope and manner of each proceeding, while noting that "some of the rules of law that apply to arbitration apply in the same manner to appraisement." *See Munn*, 115 So. 2d at 56 (quoting *Hartford Fire Ins. Co. v. Jones*, 108 So. 2d 571, 572 (Miss. 1959)). In fact, as *Munn* provides, parties contracting for an appraisal are free to set whatever appraiser neutrality requirements they wish, even if, as here, they exceed or otherwise differ from those applicable to arbitrators under state statute. *See id.* The fact that California holds both arbitrators and appraisers to the same standard in no way diminishes the force of Nationwide's citation. After all, the California standard of "evident partiality" is identical to the Mississippi statutory standard, and is less rigorous than that adopted by the parties in the contract at issue. Even applying that lower standard, a California court has held that an appraiser's "ongoing

litigation work" as an expert, even though it was only for unrelated cases, constituted "a direct pecuniary interest which casts considerable doubt on the appraiser's ability to act impartially" and was "more than ample" to vacate an award. *See Gebers v. State Farm Gen. Ins. Co.*, 38 Cal. App. 4th 1648, 1652 (Dist. Ct. App. 1995).

### III. PLAINTIFFS' REMAINING ARGUMENTS ARE INCAPABLE OF CURING MR. O'LEARY'S MANIFEST UNFITNESS.

12. Unable to marshal any argument that would permit a person in Mr. O'Leary's position from serving in any capacity requiring him to be "impartial," Plaintiffs resort to bald assertions unsupported by the record or the law. Yet none of Plaintiffs' remaining arguments, even if they had any factual merit, are remotely capable of curing Mr. O'Leary's clear partisan alignment in this matter.

13. Plaintiffs suggest throughout their Opposition to Nationwide's Motion that Mr. O'Leary "should not be disqualified for partiality, any more than Defendant's appraiser, David Horton, long-time appraiser for insurance carriers should be so disqualified." (*See* Pls.' Opp. at 1.) In support of this proposition, Plaintiffs are able to cite to precisely two facts: first, that Mr. Robert Martin, Nationwide's estimating expert, testified that he believes Nationwide's counsel learned of his identity through Mr. Horton; and second, that "the case attached as Exhibit 'B,' [to Plaintiffs' motion] shows that Mr. Horton has been appraising for insurance carriers for many years." (*See id.* at 2 n.2.) These vague and at best nominally suggestive morsels of evidence are, of course, utterly dwarfed—by multiple orders of magnitude—by the clear admissions of Mr. O'Leary's own partisan involvement in and substantial financial recovery for advancing the very claim at issue here. The notion that Mr. Horton would "probably" be precluded under the standard argued for by Nationwide is simply unsupported, and Plaintiffs' attempt to distract from Mr. O'Leary's unfitness only serves to highlight the extent of his partiality by comparison to Mr. Horton.

14. Notably, Plaintiffs' citation to Mr. Martin's innocuous comment regarding how Nationwide obtained his name stands in stark contrast to the heavy strategic involvement of Mr. O'Leary in Plaintiffs' claim. Plaintiffs argue curiously that Mr. O'Leary's prior professional relationship with counsel for Plaintiffs does not render him insufficiently impartial because he was involved in advancing Plaintiffs' claim even before their current counsel was retained, and because Plaintiffs' counsel "has been brought into cases at Mr. O'Leary's recommendation." (*Id.* at 8.) To begin, this representation in no way lessens the ongoing relationship between Mr. O'Leary and Plaintiffs' counsel. The fact of Mr. O'Leary's long involvement in this case and, moreover, his role in recommending attorneys for his clients to aid them in recovering additional money, only serves to underscore that his strategic, advocacy-oriented, results-driven role is not one befitting an "impartial" appraiser. In any event, the critical relationship here is not the clear advocacy relationship that has been established between Mr. O'Leary and Plaintiffs' counsel, but the deep financial and strategic bond between Mr. O'Leary and Plaintiffs themselves regarding the same insurance claims for which Plaintiffs seek further recovery in this litigation. Indeed, Mr. Ralph Brockman, Plaintiffs' 30(b)(6) witness, testified that Mr. O'Leary—presumably acting in his capacity as a consultant advising Plaintiffs on how to obtain more money from Nationwide—was actually the person who recommended that Plaintiffs pursue appraisal and helped him draft a letter to Nationwide demanding appraisal. (*See* Oct. 20, 2009 Deposition of Ralph Brockman at 139-40 (Ex. 12).)

15. In light of the voluminous evidence demonstrating that Mr. O'Leary is incapable of serving as an "impartial" appraiser under the appraisal clause at issue, and as a matter of Mississippi law, Plaintiffs' citation to Mr. O'Leary's own self-serving, canned description of himself as being "considered fiercely independent by the industry" simply rings hollow. Ultimately, no statements by Mr. O'Leary can change the fact that, not only has he played the central role in advancing Plaintiffs' claim for over two years, but Plaintiffs have paid him, and

continue to pay him, tens of thousands of dollars for the sole purpose of aiding Plaintiffs to obtain additional money from Nationwide. Unless the Court adopts Plaintiffs' suggestion that it read the term "impartial" out of the contract, contrary to the law established by the Mississippi Supreme Court in *Munn* and this Court's own prior holdings, Mr. O'Leary remains unfit to serve as an "impartial" appraiser in this matter.

## CONCLUSION

16.   Nationwide respectfully requests that this Court strike Mr. O'Leary as Plaintiffs' appraiser and direct Plaintiffs to select a duly "impartial" candidate, prior to the selection or appointment of an umpire or the initiation of any other steps in the contractually defined appraisal process, so that the parties may move forward with a valid appraisal that will advance, rather than unduly prolong, the present litigation.

THIS, the 16th day of November, 2009.

        Respectfully submitted,

        NATIONWIDE PROPERTY & CASUALTY
        INSURANCE COMPANY, DEFENDANT

        By Its Attorneys
        WATKINS LUDLAM WINTER & STENNIS, P.A.

        By:   /s/ Laura L. Hill
              LAURA L. HILL
              lhill@watkinsludlam.com

H. Mitchell Cowan (MSB No.7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Christian D.H. Schultz (Bar No. 44747)
Kate S. O'Scannlain (Bar No. 45034)
Robert B. Gilmore (Bar No. 44997)
Kenneth S. Clark (Bar No. 44718)
Dana E. Hill (Bar No. 45114)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Tel:  (202) 879-5000
Fax: (202) 879-5200

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

>Nathan M. Gaudet
>Matthew K. Brown
>SULLIVAN, STOLIER AND RESOR, APLC
>909 Poydras Street, Suite 2600
>New Orleans , LA 70112
>504/561-1044
>Fax: 504/561-8606
>ngaudet@ssrlawfirm.com
>mbrown@ssrlawfirm.com

This the 16th day of November, 2009.

>By: /s/ Laura L. Hill
>LAURA L. HILL
>lhill@watkinsludlam.com