IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC. and
CARRIAGE HOUSE APARTMENTS
PARTNERSHIP,                                                                                    PLAINTIFFS

v.                                                                   Civil Action No. 1:08-CV-687-LTS-RHW

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-5,                                                                              DEFENDANTS

**MOTION TO PRECLUDE LEWIS O'LEARY AND JERRY WIGGINS FROM
PRESENTING EVIDENCE OR TESTIMONY REGARDING ESTIMATES OF
DAMAGE TO PLAINTIFFS' PROPERTY**

Defendant Nationwide Property and Casualty Insurance Company ("Nationwide"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, moves for an order precluding Plaintiffs' designated litigation expert, Lewis O'Leary, from presenting testimony or supplemental expert disclosures regarding estimates of damage to Plaintiffs' property, due to his and Plaintiffs' failure to comply with the expert disclosure requirements of the Court's Case Management Order and the Federal Rules. Nationwide further moves to preclude testimony by, or supplemental repair estimates from, Jerry Wiggins, the individual on whom Mr. O'Leary relied to create the damage estimates forming the basis for O'Leary's testimony. In support of its motion, Nationwide states as follows:

1.      As a result of finally receiving and reviewing engineering reports and photographic evidence long available to Plaintiffs, their designated expert, Lewis O'Leary, and his assistant Jerry Wiggins, Plaintiffs have now disavowed their initial estimates of purported wind-related damage to Plaintiffs' property, and have indicated that they intend to prepare entirely new damages estimates.

2.     At this date, with the expert disclosure deadline long since passed, both Messrs. O'Leary and Wiggins having already sat for depositions, and the discovery period has closed. Nationwide therefore submits that the Court should not indulge the failure of Plaintiffs and their expert (and supporting witness) to comply with their discovery obligations. Accordingly, Nationwide asks the Court to preclude Lewis O'Leary from submitting a new expert report, and to preclude Mr. O'Leary and Mr. Wiggins — a "consultant" to Mr. O'Leary who has not been designated as an expert witness — from presenting testimony or evidence concerning estimates of wind damage to Plaintiffs' property.

3.     Pursuant to the Court's initial case management order, Nationwide served its pre-discovery disclosures on January 23, 2009. Nationwide then supplemented its initial disclosures on May 12, 2009. Accompanying those disclosures, Nationwide produced hundreds of photographs of Plaintiffs' property taken by Nationwide's adjusters shortly after Hurricane Katrina. In addition, Nationwide produced copies of the reports from National Forensic Consultants ("NFC"), the engineers Nationwide originally retained to determine the cause and origin of damage to Plaintiffs' property in connection with the adjustment of Plaintiffs' property insurance claim.

4.     Plaintiffs served their expert disclosures on June 30, 2009, identifying three individuals as potential testifying experts: John Myers, Lewis O'Leary, and Stephen Harned. (*See* June 30, 2009 Pls.' Combined Expert Disclosure (Dkt. 40).) Plaintiffs' expert disclosure included a report from Lewis O'Leary concerning the cause and scope of damage to Plaintiffs' property as well as estimates of the cost to repair purported wind-related damage. (*See* June 29, 2009 Probuilders Report of Findings (Ex. 1).)

5.      Nationwide served Plaintiffs with a report from its designated engineering expert, James Skees, P.E., on September 11, 2009.  (*See* Sept. 11, 2009 Ltr. from S. Whisnant to M. Brown & N. Gaudet (Ex. 2).)

6.      On October 6, 2009, counsel for Nationwide deposed Mr. O'Leary.  At his deposition, Mr. O'Leary testified that just the day before he had been given the expert report of Mr. Skees, which attached hundreds of photographs taken by Nationwide adjusters after the storm, and which also referenced and discussed the original NFC engineering reports (the same documents produced by Nationwide to Plaintiffs in January).  (*See* Oct. 6, 2009 Deposition of Lewis O'Leary at 8-10 (Ex. 3).)  Mr. O'Leary stated that he had never seen the NFC reports before:  "I'm told that there are some national forensic reports out there on this property, but I haven't seen them yet.  Q. Would it be important for you to ensure that your work is complete and accurate to review those engineering reports?  A. Absolutely.  Any forensic engineer worth his weight in salt wants to get his hands on any and everything that would be relative to the case to have a total picture."  (*Id.* at 9-10.)

7.      By the conclusion of his deposition — during which Nationwide's counsel showed him numerous photographs of the interior of Plaintiffs' property that contradicted his damage estimates[1] — Mr. O'Leary admitted that his opinions were based on incomplete information and that he needed to review the Nationwide materials in order to be able to present accurate testimony:

---

[1]  To take just a few examples, Mr. O'Leary's estimates included replacing cabinets that Nationwide photographs showed were not damaged after the storm, (*see* O'Leary Dep. at 218-220); repairs to walls and ceilings that Nationwide photographs showed were not damaged above the storm surge water line (*id.* at 225-26); and nearly identical repair estimates for two different stairwells, even though Nationwide photographs showed one stairwell significantly damaged, but the other unscathed (*id.* at 228-230).  Nationwide reserves the right to challenge Mr. O'Leary's proffered expert testimony on the grounds that it fails to satisfy Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

> If I can get my hands on what Nationwide has, it could easily affect my report, because up to now, I haven't had Nationwide's material, but I'm in the process of getting Nationwide material ... I'm about to get National Forensic Group's reports, and God willing, a lot of photographs. That makes a difference. ***Writing a report based on information that you can get on your own that was either from independent third parties and one side only is still not a complete picture. I need a whole picture to write a balanced report.***

(O'Leary Dep. at 242.)[2]

8.  Mr. O'Leary also testified that the damage estimates attached to his report actually were prepared by another individual, Jerry Wiggins, whom Plaintiffs never designated as a testifying expert witness. (*Id.* at 133-34 ("Q: Now the fourth person is Mr. Wiggins, Jerry Wiggins, and you have him listed as a consultant. What did Mr. Wiggins do or consult on that's reflected in your report or estimates? A: Jerry actually produced these Xactimate estimates for me.")). Nationwide subsequently subpoenaed Mr. Wiggins and noticed his deposition for November 4, 2009. On October 29, 2009, Mr. Wiggins telephoned Nationwide's counsel directly to inform Nationwide that he was planning on preparing new damages estimates, and to ask that his deposition be postponed until those estimates were complete. Nationwide's counsel wrote to counsel for Plaintiffs, stating that Nationwide intended to proceed with Mr. Wiggins' deposition, asking for any revised estimates he prepared prior to his deposition, and reserving all rights with respect to Messrs. Wiggins and O'Leary's work on these matters. (*See* Oct. 29, 2009 Eml. from R. Gilmore to M. Brown (Ex. 4).)

9.  Nationwide then deposed Mr. Wiggins on November 4. At his deposition, Mr. Wiggins provided Nationwide's counsel with just two incomplete revised estimates (out of

---

[2] Emphasis added unless otherwise indicated.

eighteen total estimates — one for each building at the Carriage House property). (*See* Nov. 4, 2009 Deposition of Jerry Wiggins at 225 (Ex. 5).) He also confirmed that he anticipated needing to revise all of the estimates he had prepared for Mr. O'Leary to use in his reports. (*Id.* at 99 ("…so I will continue revising the estimates, because I think it needs to be done based upon the information that I -- wealth of information that I've been provided. Q: And the information you're referring to is -- is what? A: ***Primarily the Nationwide photos and the reports by NFC, there's just a wealth of information in there that clears up so many things that I didn't have access to before.***")). Significantly, Mr. Wiggins disavowed the earlier damages estimates that he had prepared and that Mr. O'Leary had relied upon in reaching his opinions as to the scope of damage to Plaintiffs' property and the cost of repairing that damage:

> Q: So would it be fair to say that in order for you to give a complete and accurate estimate, you need to go back and examine all the photographs that Nationwide has taken and any other new evidence to be certain that you identified only items that were actually present at the time of Hurricane Katrina?
>
> A: That's what I'm doing.
>
> ***Q: Would you feel comfortable relying on the estimates that you've previously made at this point in time?***
>
> ***A: No, not with this information that I have now, no.***

(*Id.* at 144) (emphasis added).

10. The discovery period has now closed, and while it has been nearly two weeks since Mr. Wiggins sat for his deposition, Plaintiffs have yet to provide Nationwide with any complete revised estimates, a revised expert report from Mr. O'Leary, or even a date certain as to when they expect to provide such materials. Plaintiffs, and their expert Mr. O'Leary (as well as his "assistant" Mr. Wiggins, who in fact did the estimating work for Mr. O'Leary), plainly have failed to comply with their obligations under the Federal Rules of Civil Procedure as well as this

Court's Case Management Order. The Federal Rules require an expert disclosure to include "a written report" containing "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). These reports must be "'detailed and complete' … to avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (quoting Fed. R. Civ. P. 26 advisory committee's notes).

11.  The Court is empowered to set deadlines for expert disclosures. *See* Fed. R. Civ. P. 16(b). Where the Court has established such timing requirements, it may sanction violations of that Order, including by prohibiting the introduction of "designated matters in evidence." Fed. R. Civ. P. 16(f); 37(b)(2)(A). This Court has precluded parties from submitting new or supplemental expert disclosures past the discovery deadline in several Hurricane Katrina-related cases. *See, e.g.*, Jan. 30, 2008 Mem. Op. and Order Granting Def.'s Mot. to Strike Donald Dinsmore as an Expert Witness and to Strike the Supplemental Report of Stephen Wistar, *Espinosa v. Nationwide Mut. Fire Ins. Co.*, No. 1:06CV896-LTS-RHW (S.D. Miss.) (Dkt. 151); July 10, 2009 Order, *Politz v. Nationwide Mut. Fire Ins. Co.*, No. 1:08CV18-LTS-RHW (S.D. Miss.) (Dkt. 386).

12.  Here, the Court set a June 30, 2009 deadline for Plaintiffs' expert disclosures, and a November 16, 2009 deadline for the close of *all* discovery. Submission of an expert report (original or supplemental) some *five* months after expert reports were due, after the close of discovery and after the witnesses already have been deposed, would violate both the Federal Rules and this Court's Case Management Order. Plaintiffs' failure to meet the requirements for expert disclosures is all the more egregious given that their need to have Messrs. O'Leary and

Wiggins completely overhaul the damage estimates is the result not of late-discovered evidence, but rather documents and photographs that Plaintiffs have had for months, which they simply sat on without providing to their expert.

13. Any attempt by Plaintiffs to submit a new expert report at this stage of the litigation undermines this Court's efforts to manage its docket, and unduly prejudices Nationwide. Should the Plaintiffs revise Messrs. O'Leary's and Wiggins' damages estimates now, Nationwide will have to re-depose each individual. Moreover, Nationwide's experts will also need to have the opportunity to review and potentially respond to these new damages estimates, which would require an additional round of revised expert reports and likely depositions as well. Such an upheaval to the case calendar at this stage creates a very real risk that the current trial schedule would be thrown to the side.

14. Finally, that Plaintiffs' damages expert and his estimating consultant have now abandoned their initial estimates of damages to Plaintiffs' property strikes at the very heart of Plaintiffs' case. Plaintiffs' central claim in their lawsuit is that Nationwide should have paid them millions more for purported damages their property suffered during Hurricane Katrina. Yet now, with the discovery period closed, both Plaintiffs' designated expert and undesignated supporting witness admit that their damages estimates — the predicate for Plaintiffs filing this action against Nationwide — are wrong and cannot be relied upon at trial. The Court should sanction such conduct by precluding Messrs. O'Leary and Wiggins from presenting any evidence, argument or testimony regarding estimates of damage to Plaintiffs' property — either the initial estimates they now have disavowed, or the revised estimates they have yet even to prepare.

15.     Due to the nature of this Motion, in which all pertinent legal authorities have been set forth fully herein, Nationwide respectfully requests that the Court waive its usual requirement of a separate memorandum of authorities under Uniform Local Rule 7.2(D).

16.     In support of its Motion, Nationwide attaches and incorporates by reference the following exhibits

| | | |
|---|---|---|
| Exhibit 1: | | June 29, 2009 Probuilders Report of Findings |
| Exhibit 2: | | *See* Sept. 11, 2009 Ltr. from S. Whisnant to M. Brown & N. Gaudet |
| Exhibit 3: | | Oct. 6, 2009 Deposition of Lewis O'Leary |
| Exhibit 4: | | Oct. 29, 2009 Eml. from R. Gilmore to M. Brown |
| Exhibit 5: | | Nov. 4, 2009 Deposition of Jerry Wiggins |

WHEREFORE, PREMISES CONSIDERED, Nationwide respectfully requests that this Court enter an order precluding Messrs. O'Leary and Wiggins from presenting evidence, argument or testimony regarding estimates of damage to Plaintiffs' property. In the alternative, Nationwide respectfully requests that the Court grant it leave to reopen the depositions of Messrs. O'Leary and Wiggins, with Plaintiffs to bear Nationwide's attorneys fees and costs.

THIS, the 16th day of November, 2009.

> Respectfully submitted,
>
> NATIONWIDE PROPERTY & CASUALTY
> INSURANCE COMPANY, DEFENDANT
>
> By Its Attorneys
> WATKINS LUDLAM WINTER & STENNIS, P.A.
>
> By:    /s/ Laura L. Hill
>       LAURA L. HILL
>       lhill@watkinsludlam.com

H. Mitchell Cowan (MSB No.7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Christian D.H. Schultz (Bar No. 44747)
Kate S. O'Scannlain (Bar No. 45034)
Robert B. Gilmore (Bar No. 44997)
Kenneth S. Clark (Bar No. 44718)
Dana E. Hill (Bar No. 45114)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

## CERTIFICATE OF SERVICE

      I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

      Nathan M. Gaudet
      Matthew K. Brown
      SULLIVAN, STOLIER AND RESOR, APLC
      909 Poydras Street, Suite 2600
      New Orleans , LA 70112
      504/561-1044
      Fax: 504/561-8606
      ngaudet@ssrlawfirm.com
      mbrown@ssrlawfirm.com


This the 16th day of November, 2009.


      By:    /s/ Laura L. Hill
            LAURA L. HILL
            lhill@watkinsludlam.com