IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC. and
CARRIAGE HOUSE APARTMENTS
PARTNERSHIP,                                                                                    PLAINTIFFS

v.                                                                Civil Action No. 1:08-CV-687-LTS-RHW

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-5,                                                                          DEFENDANTS

RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
EXTENSION OF TIME TO COMPLETE DISCOVERY

Defendant Nationwide Property and Casualty Insurance Company submits this Response in Opposition to Plaintiffs' improper and untimely request for an eight-week extension of the discovery deadline, along with what amounts to a backdated, seven-month extension of Plaintiffs' June 30, 2009 expert disclosure deadline, so that Plaintiffs can re-do what they admit is a fatally flawed and unreliable expert report.

INTRODUCTION

1.     Plaintiffs' have come to the Court, *after the close of discovery*, to seek eight more weeks of discovery for the sole purpose of re-doing an expert report—itself the subject of a pending motion to strike based on Plaintiffs' expert's own admission of its fatal unreliability—that Plaintiffs' own motion for an extension reveals to be due entirely to Plaintiffs' and their counsel's dilatory conduct and failure to comply with discovery obligations. Plaintiffs admit that they failed to provide their purported liability expert, Lewis O'Leary, and the individual who actually did the estimating work that underlies Mr. O'Leary's conclusions, Jerry Wiggins, with detailed post-Katrina engineering reports and photographs that had been in Plaintiffs' possession since at least May 12, 2009. These materials were not provided before Mr. O'Leary submitted

his June 29, 2009 expert report because Plaintiffs failed to communicate what "had and had not already been provided to Mr. O'Leary," and Plaintiffs' counsel was "unable to absorb and familiarize himself with all of the information disclosed by Nationwide prior to the expert report deadline." (Nov. 24, 2009 Pls.' Opp. to Mot. to Preclude Lewis O'Leary & Jerry Wiggins from Presenting Evid. or Test. Regarding Estimates of Damage to Pls.' Property, at 2 (Dkt. 200) ("Opp. to Preclude").) Indeed, Mr. O'Leary was not even made aware of these materials until the day before his October 6, 2009 deposition, nearly five months later.

2. Despite recognizing at Mr. O'Leary's deposition that his report was fatally flawed and that he had not been given information "critical" to his ability to create "a whole picture to write a balanced report," Plaintiffs did not seek any relief from the Court until after the discovery deadline, and after Nationwide had moved to compel production and to exclude the admittedly unreliable estimates. (Oct. 6, 2009 Deposition of Lewis O'Leary at 95, 242 (Ex. 1); *see also* Nov. 4, 2009 Deposition of Jerry Wiggins at 144 ("Q. Would you feel comfortable relying on the estimates that you've previously made at this point in time? A. No, not with this information that I have now, no.") (Ex. 2).) In short, the deadline for Plaintiffs to designate experts passed over five months ago, and discovery closed over a week before Plaintiffs filed their motion.

**ARGUMENT**

3. Plaintiffs should not be rewarded for their late realization that their damages case was untenable with a free pass to design a whole new theory after the close of discovery. As the Fifth Circuit has made clear, it is improper to grant a continuance where doing so would "result[] in additional delay and increase[] the expense of defending the lawsuit … [and] would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990). The central inquiry in determining

whether to modify a scheduling order issued pursuant to Federal Rule of Civil Procedure 16(b), which "shall not be modified except upon a showing of good cause and by leave of the district judge," is whether the existing deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).[1]  Because the inquiry centers on the movant's reasons for seeking an extension, "***[i]f that party is not diligent, the inquiry should end***." *Id.* at 609.[2]  Accordingly, the Court should deny Plaintiffs' motion for an extension of the discovery deadline and grant Nationwide's separately filed Motion to Preclude Lewis O'Leary and Jerry Wiggins From Presenting Evidence or Testimony.  Plaintiffs' motion is itself inexcusably untimely, as it was filed nine days after the close of discovery despite Plaintiffs' ample advanced notice of the deficiency of their expert report.  Moreover, Plaintiffs' failure to provide its own expert with critical information prior to the submission of his expert report is an error entirely of their own making.[3]  Under these circumstances, not only should Plaintiffs' request for an extension of the discovery and expert deadlines be denied, this Court should preclude Plaintiffs from introducing any testimony from Mr. O'Leary or Mr. Wiggins at the trial of this matter.

---

[1]  *See also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

[2]  Emphasis added unless otherwise noted.

[3]  It is worth noting that Plaintiffs not only have demonstrated an utter lack of diligence in relation to the very issue for which they seek an extension, they have abused the discovery process in other ways  Despite being plainly responsive to months-old discovery requests, and the subject of countless specific requests by Nationwide's counsel, Plaintiffs withheld production of over a thousand pages of documents until November 30, 2009—doubling their total prior production two weeks after the close of discovery.  Nationwide's initial review of these documents has revealed numerous critical facts that were previously undisclosed.  Plaintiffs also submitted a procedurally improper, irrelevant, and out-of-time Affidavit from Lewis O'Leary on November 20, 2009.  Nationwide expressly reserves its right to seek additional relief as a result of Plaintiffs' late document production and other discovery violations.

I.  **PLAINTIFFS' MOTION WAS FILED OUT OF TIME DUE ENTIRELY TO THEIR OWN UNEXPLAINED DILATORY CONDUCT.**

4.      As an initial matter, Plaintiffs' request should be denied because their motion for an extension of the discovery deadline, which was made necessary by their own untimeliness, is itself untimely. *See Barnett v. Tree House Café, Inc.*, No. 5:05CV195-DCB-JMR, 2006 WL 3083757, at *2 (S.D. Miss. Oct. 27, 2006) (upholding magistrate judge's denial of motion to extend discovery deadline on grounds that "[t]he Plaintiff's motion to extend the discovery deadline was itself untimely, inasmuch as the deadline had already passed," and rejecting proffered excuse of counsel's busy schedule and short staff).  "Because the deadline for discovery expired, Plaintiffs are obligated to seek a modification of the Scheduling Order by demonstrating 'good cause' before … redrafting their expert reports," which in turn "'primarily considers the diligence of the party seeking the amendment.'" *DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  In order to meet the good-cause showing required to obtain a modification to the scheduling order under Rule 16, the relevant inquiry extends not only to whether the movant's "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding the [movant's] diligent efforts to comply," but to whether the movant "was ***diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with that order***." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

5.      Discovery closed on November 16, 2009.  Plaintiffs' motion was filed on November 25, 2009.  Plaintiffs were aware of their failure to provide necessary documents no later than October 5, 2009, the day before Mr. O'Leary's deposition when he was first shown the photographs and engineering reports produced long ago by Nationwide that rendered his

opinions inoperative. Moreover, on the morning of his November 4, 2009 deposition, Mr. Wiggins produced draft estimates for two of the eighteen Carriage House buildings. As Mr. Wiggins testified, he believed his previous estimates to be completely unreliable in light of the previously withheld information. (Wiggins Dep. at 144 ("Q. Would you feel comfortable relying on the estimates that you've previously made at this point in time? A. No, not with this information that I have now, no.").) When counsel for Nationwide reserved the right to "reopen this deposition based upon the preliminary reports provided this morning, as well as any prospective additional reports or estimates that Mr. Wiggins may produce," counsel for Plaintiffs stated that he "[a]greed." (*Id.* at 238.)

6.  Having known of the need to prepare new estimates well in advance of the discovery deadline, Plaintiffs have not and cannot offer any reasonable excuse for their failure to preserve this issue by bringing it to the Court's attention before the discovery period expired. *See DAG*, 226 F.R.D. at 106, 108 (reasoning that party was not diligent, and thus did not show "'good cause' necessary to persuade the Court to modify the Scheduling Order and permit" belated discovery where "Plaintiffs clearly had notice well before the discovery period ended" of the necessity of the further discovery sought). For this reason alone, Plaintiffs' motion should be denied.

**II.  PLAINTIFFS REQUEST AN EXTENSION TO CURE A PROBLEM OF THEIR OWN MAKING.**

7.  With their expert having disavowed his own estimates of the damage to Plaintiffs' property, Plaintiffs now ask this Court for a second chance at developing an argument for additional recovery beyond the substantial amount—well over $1 million—that they have already received from Nationwide for damage to the Carriage House property. Yet the failures of Plaintiffs' damages case is the result of their own utter lack of diligence in declining to

provide their expert with what is virtually the only documentation of the damage to their property from the immediate aftermath of Hurricane Katrina.

8. As Nationwide has already demonstrated in detail elsewhere, the problem from which Plaintiffs seek relief is exclusively of their own making. (*See* Nov. 30, 2009 Rebuttal in Supp. of Nationwide's Mot. to Preclude Lewis O'Leary & Jerry Wiggins from Presenting Evid. or Test. Regarding Estimates of Damage to Pls.' Property (Dkt. 204) ("Rebuttal to Preclude").) Indeed, Plaintiffs admit that, "[a]s Nationwide correctly points out, Plaintiffs are not in compliance with the Court's orders." (Opp. to Preclude at 2.) Plaintiffs further represent that their expert, Mr. O'Leary, and his estimator, Jerry Wiggins,[4] have "expressed a need to substantially revise their expert conclusions, because of photographic and other evidence that was not made available to them when they initially prepared their reports." (*Id.*) Despite the fact that the information forming the basis of Plaintiffs' current request for an extension of the discovery period was in Plaintiffs' possession no later than May 12, 2009, they decided not to provide that critical evidence to Mr. O'Leary in advance of his initial June 29, 2009 expert report. Instead, for reasons yet to be fully explained, Plaintiffs waited to provide Mr. O'Leary with this information until the day before his October 6, 2009 deposition.[5]

---

[4] Plaintiffs refer to Mr. O'Leary's assistant, Jerry Wiggins, as an "expert," even though Plaintiffs did not designated him as such. Plaintiffs' references are likely a recognition that, as their deposition testimony made clear, Mr. Wiggins, *not* Mr. O'Leary, actually created the Xactimate damages estimates on which Mr. O'Leary relies, with little if any input from Mr. O'Leary. Plaintiffs' failure to designate Mr. Wiggins as an expert is yet one more example of their failure to abide by the expert disclosure requirements of Federal Rule 26 and the Court's Case Management Order, and further underscores the need to preclude either witness from presenting damages estimates. Nationwide objects to any attempt by Plaintiffs to surreptitiously designate or tender Mr. Wiggins as a testifying expert.

[5] Plaintiffs explain that their counsel was simply "not aware of what had and had not already been provided to Mr. O'Leary before counsel enrolled." (Opp. to Preclude at 2.) This excuse only serves to undermine Plaintiffs' position, as it is clear that Plaintiffs themselves failed to provide critical information to Mr. O'Leary. Plaintiffs represent that their counsel was "enrolled on March 27, 2009." (*Id.*) Yet significant portions of the information at issue here were produced to Plaintiffs on January 23, 2009 as part of Nationwide's prediscovery

(Continued…)

9. This situation is similar to that considered by the Fifth Circuit in *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997). There, the court upheld a district court's denial of a request to supplement an expert report in derogation of a scheduling order deadline. As here, the request was made "merely because the deposition of its expert witness did not go well," and the movant "offered no justification for its delay in attempting to cure [the] deposition and report." *Id.* at 257. Noting the district court's finding that the result of this request would be prejudice to the non-moving party and a delay of trial, the court upheld the power of the district courts "to control their dockets by ***refusing to give ineffective litigants a second chance to develop their case***." *Id.* at 257-58 (quoting lower court opinion without citation) ("[t]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants … and … disrupt the trial date in this case"). Here, too, the Court should exercise that authority rather than exercising its discretion to permit Plaintiffs to reap an undeserved benefit from their own unexplained lack of diligence.

10. Plaintiffs' attempts to avoid this conclusion are unpersuasive. Plaintiffs begin by misleadingly casting their untimely, unilateral plea for a second chance as a request for an extension premised upon "the need for accurate estimated damages from both parties." (Nov. 25, 2009 Mem. in Supp. of Mot. for Extension of Time to Complete Disc. & Supp. Expert Reports at 3 (Dkt. 202) ("Mem. for Extension").) Quite simply, the facts do not bear out this characterization. In fact, Plaintiffs have waived any right they might otherwise have had to take further discovery relating to Nationwide expert Robert Martin. Mr. Martin supplemented his

---

disclosures. The Court should give no credence to Plaintiffs' counsel's attempt to deflect blame from his clients as a means of avoiding the full consequences of their error. (*See id.* ("Plaintiffs should not be penalized because their counsel was unable to absorb and familiarize himself with all of the information disclosed by Nationwide prior to the expert report deadline.").)

original report based on additional information adduced during deposition discovery, and completed all revisions prior to the discovery cutoff. While it may be convenient for Plaintiffs now to assert that "the timing of [Mr. Martin's] latest revised report" left them with "no time to take an updated deposition of Mr. Martin," (*id.* at 3), Plaintiffs in fact neither sought to postpone Mr. Martin's original deposition, nor to re-depose Mr. Martin in light of his damage estimate revisions. On the other hand, Plaintiffs, along with Messrs. O'Leary and Wiggins, concede that their previously produced estimates are no longer capable of being relied upon, and insist that they be given an extra two months within which to create new estimates based on information that has been in Mr. O'Leary's possession since at least October 5, 2009 – over 40 days prior to the close of discovery. Not only did Nationwide reserve its right to reopen the depositions of both Mr. O'Leary and Mr. Wiggins, it also has moved to exclude their reports and testimony from evidence.

11. Plaintiffs also cannot escape the consequences of their oversight, and/or strategic backfire, by resorting to the baseless assertion that Nationwide withheld a document purportedly necessary for using the information that Plaintiffs admittedly failed to provide their expert. Plaintiffs have undertaken to turn a professional courtesy into an excuse for their own mistake. Plaintiffs are entirely mistaken in asserting that "the reference log seems to have been in Defendant's possession since some point in 2005." (Mem. for Extension at 3.)[6] Neither is it true that, "even if Mr. O'Leary or Mr. Wiggins had been given the pictures, they could not have known for sure which apartments were depicted." (*Id.* at 2.) As fully explained elsewhere, the "index"—created by counsel for Nationwide as a professional courtesy, not produced as a

---

[6] Similarly, Plaintiffs' assertion that, unlike Mr. O'Leary, Mr. Martin "had access to Defendant's reference log" in creating his expert report is both groundless and untrue. (*Id.*)

business record of Nationwide—simply matched the photographs to the activity log entries, which resulted in nothing more than confirmation of the fact that the photographs following a picture of the front door of each apartment unit depicted damage within that particular unit, as was already clear from the manner in which they were maintained and produced. (*See* Rebuttal to Preclude at 5.)

12.    Plaintiffs are thus well off the mark in advancing the spurious claim that Messrs. O'Leary and Wiggins are "in a position to provide a more accurate report" only "[n]ow that Defendant has finally provided this reference log." (Pls.' Mem. in Supp. of Mot. for Extension of Time to Complete Discovery and Supplement Expert Reports at 3.) Indeed, as Mr. Wiggins testified, he had managed to complete draft estimates for two buildings estimates as of November 4, more than a week before the index was created and given to Plaintiffs. (Wiggins Dep. at 225.)

## CONCLUSION

13.    There is ultimately no valid basis for Plaintiffs' request for an extension of the discovery deadline: Plaintiffs are not entitled to a second chance at their expert reports; they have waived any right to re-depose Nationwide's expert, Mr. Martin; and Nationwide does not seek any extension of the deadline. Ultimately, a continuance would only "result[] in additional delay and increase[] the expense of defending the lawsuit . . . [and] would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990). The Court should deny Plaintiffs' motion, and instead grant Nationwide's separately filed Motion to Preclude Lewis O'Leary and Jerry Wiggins From Presenting Evidence or Testimony.

14.     Due to the nature of this Response, in which all pertinent legal authorities have been set forth fully herein, Nationwide respectfully requests that the Court waive its requirement of a separate memorandum of authorities under L.U.Civ.R. 7.2(b)(4).

WHEREFORE, PREMISES CONSIDERED, Nationwide respectfully requests that this Court deny Plaintiffs' Motion for Extension of Time to Complete Discovery and Supplement Expert Reports.

THIS, the 4th day of December, 2009.

>Respectfully submitted,
>
>NATIONWIDE PROPERTY & CASUALTY
>INSURANCE COMPANY, DEFENDANT
>
>By Its Attorneys
>WATKINS LUDLAM WINTER & STENNIS, P.A.
>
>By:     /s/ Laura L. Hill
>         LAURA L. HILL
>         lhill@watkinsludlam.com

H. Mitchell Cowan (MSB No.7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Christian D.H. Schultz (Bar. No. 44747)
Robert B. Gilmore (Bar No. 44997)
Kate S. O'Scannlain (Bar No. 45034)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Tel:  (202) 879-5000
Fax: (202) 879-5200

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

> Nathan M. Gaudet
> Matthew K. Brown
> SULLIVAN, STOLIER AND RESOR, APLC
> 909 Poydras Street, Suite 2600
> New Orleans , LA 70112
> 504/561-1044
> Fax: 504/561-8606
> ngaudet@ssrlawfirm.com
> mbrown@ssrlawfirm.com

This the 4th day of December, 2009.

> By:  /s/ Laura L. Hill
>      LAURA L. HILL
>      lhill@watkinsludlam.com