IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC. and
CARRIAGE HOUSE APARTMENTS PARTNERSHIP
    PLAINTIFFS

  VS                              CIVIL ACTION NO. 1:08-CV-687-LTS-RHW

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY; NATIONWIDE MUTUAL
INSURANCE COMPANY; NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY; and
JOHN DOES 1-5
    DEFENDANTS

**MEMORANDUM IN OPPOSITION TO NATIONWIDE'S MOTION
TO STRIKE LEWIS O'LEARY AS PLAINTIFFS' LITIGATION EXPERT**

MAY IT PLEASE THE COURT:

Plaintiffs, Carriage House Apartments Partnership and Sunquest Properties, Inc. ("Insureds") file this Memorandum in Opposition to Nationwide's Motion to Strike Lewis O'Leary as Plaintiffs' Litigation Expert. Nationwide complains that Mr. O'Leary is compensated on a contingency basis, is rendering engineering opinions contrary to Mississippi law, is serving as a "mouthpiece" for the testimony of licensed engineers, and is rendering an opinion that is contrary to the physical evidence. Each of Nationwide's arguments is misguided and incorrect.

**I.**    **Facts**

As reiterated by Insureds, Mr. O'Leary is not compensated on a contingency basis. What he is ultimately paid bears no relation to what Insureds may recover in this suit. As previously stated in Insureds' Memorandum in Opposition to Nationwide's Motion for Sanctions, Insureds have paid Mr. O'Leary approximately $132,000.00 with a

1

balance of approximately $58,000.00 from which he may draw, for a total of $190,000, the cap represented by Mr. O'Leary's September 22, 2009 agreement, attached hereto as Exhibit "A." This payment is based on Mr. O'Leary's contract price of $200 per hour for work done on his Report of Findings.

Mr. O'Leary's Report of Findings is not an engineering report, as defined by Mississippi law. Nationwide does not offer support for its position that Mr. O'Leary is practicing engineering in drafting his report. Nationwide does not support the idea that a licensed engineer is required to produce his report in litigation such as this. Mr. O'Leary was not retained as an engineer or an engineering expert, and Insureds do not attempt to present him as such. Further, as Mr. O'Leary testified at his deposition, the State of Mississippi does not find his work concerning causation and damage estimation to be the "practice of engineering," as defined by Mississippi law. According to the Mississippi Board of Licensure for Professional Engineers and Surveyors (the "Board"), a report that addresses causation and damage estimation of a residence is not an engineering report.

In late 2007, a Report of Findings drafted in 2006 by Mr. O'Leary in a similar case was forwarded to the Board. This report and correspondence between Mr. O'Leary and the Board is included in Affidavit of Lewis O'Leary, attached as Exhibit "B." This report is similar to the report drafted by Mr. O'Leary in this case because Mr. O'Leary addresses issues of causation and similar damages in both reports. The person or entity who forwarded the 2006 report to the Board accused Mr. O'Leary of practicing engineering without a license. Mr. O'Leary was allowed to respond to these accusations. Eventually, the Board issued Mr. O'Leary a letter stating that his Report of Findings, which addressed issues of causation, estimation of damages, building code review,

window damage caused by wind, roof decking damage, and other damages similar to those in this case, was not the "practice of engineering" as defined by Mississippi law. Exhibit B.

Mr. O'Leary does not intend to serve as a "mouthpiece" of any licensed engineer, as Nationwide claims. He has never attempted to hide the fact that he consulted with Mr. Terry Moran, a licensed engineer. In any event, for Mr. O'Leary to serve as a "mouthpiece" of these engineers, his report would have to be an engineering report. It is not. Mr. Moran and Mr. O'Leary have similar educational and employment backgrounds. The two men merely conferred as fellow professionals based on the physical evidence concerning the property.

Mr. O'Leary's opinion bears direct relation to the physical evidence he possessed at the time. Nationwide complains that Mr. O'Leary's report bears no relation to the evidence, but his opinion is directly related to the evidence he viewed. Now that he has more evidence, he has rendered an estimate based on that evidence. This estimate has been sent to Nationwide, and Mr. O'Leary will be able to answer questions concerning this estimate at his deposition, scheduled for Friday, January 15, 2010.

Nationwide, however, has declined the invitation to question Mr. O'Leary about his revisions. Nationwide attempts to characterize Mr. O'Leary's testimony as his begrudging admission that additional photographs would be important for his report. This is not accurate. Mr. O'Leary freely admitted that the Nationwide photographs are important for his report. Now that he has reviewed these photographs, he rendered an estimate based on this additional evidence.

**II.     Law and Argument**

    **A.     Mr. O'Leary's payment is not contingent on Insureds' recovery.**

Nationwide continues to argue that Mr. O'Leary is compensated on a contingency basis. As the Court is well aware, Insureds have extensively briefed this issue in other memoranda. Mr. O'Leary's $200 per hour and $190,000 cap bear no relation to Insureds' recovery in this matter. This is his payment, and it is not contingent on Insureds' recovery of any amount.

Nationwide argues that the cap represents a contingency because it represents "the remainder of the 3% of the ten million dollar forecasted recovery." This makes no sense. First of all, the cap can be based on anything the parties to the agreement felt is appropriate as long as that amount does not change based on the amount of eventual recovery. The important distinction is that his payment is not contingent on the outcome of this matter. Mr. O'Leary is paid by the hour, and his cap does not change based on the recovery of Insureds in this matter. Considering the fact that Mr. O'Leary has been paid approximately $140,000.00 so far, Nationwide's math is clearly incorrect. Despite Nationwide's insistence that "this sort of arrangement – a witness who was designated as an expert having a stake in the litigation" is afoot here, Mr. O'Leary has no such stake in the outcome of this litigation.

Next Nationwide argues that Mr. O'Leary's "fiercely independent" style is contradicted by the alleged contingency payment agreement. First, and as stated previously, Mr. O'Leary has no such contingency arrangement. Second, Nationwide does not provide the proper context for Mr. O'Leary's statement. As Mr. O'Leary stated:

> There are – as you are probably aware, there are not many carriers that will employ me for whatever reason. I assume they have their reason, but

4

>one of the reasons that were explained to me is some of the carriers started drifting away from me is **I said what I thought, and I would take the position if you didn't want to know exactly how I felt about the loss, you shouldn't have hired me.** There are public adjusters that will not hire me for the same reason. I am considered fiercely independent by the industry. There are people that work full time for the carriers who rely upon my advice on how to handle certain issues today and the carrier never knows they're using me because there's no bill turned in. In other cases, there are bills turned in where the assignment was sophisticated enough they needed me to put hands on the property and render an opinion. **I tell both sides the same story. If you don't want me to render a brutally honest opinion, don't hire me. And I use that same mind set whether I'm an appraiser or writing a forensic report.**

Deposition of Lewis O'Leary, pp. 52 and 53, relevant portions of which are attached as Exhibit "C," with emphasis supplied.

Mr. O'Leary stated that his opinions are not based on his client's desires. He is not beholden to anyone. Mr. O'Leary sticks to the truth and the facts at his disposal, and his track record supports this. Nationwide has yet to point to any evidence to suggest otherwise with the exception of evidence of Mr. O'Leary's advocacy for his client.

Nationwide complains that Mr. O'Leary stated he would "style an argument" for his clients' case. Apparently, Nationwide is arguing that an expert should not advocate for his clients' position. Mr. O'Leary advocates for his clients' position, as any expert should. As noted by the Court, experts are "employed to highlight the aspects of the evidence favorable to the party who hires them and to explain how the established facts fit within their employer's theory of the case." December 11, 2009 Memorandum Opinion (Doc. 215). Insureds submit that in Mr. O'Leary's correspondence with Insureds, Mr. O'Leary is merely highlighting the aspects of evidence favorable to Insureds. The evidence Nationwide submits shows Mr. O'Leary's advocacy in motion. As such, the Court should deny Nationwide's Motion to Strike.

### B. Because Mr. O'Leary's report does not represent the "practice of engineering" as defined by Mississippi law, Mr. O'Leary's testimony is not engineering testimony.

Nationwide argues that Mr. O'Leary is not competent to testify because he is not a licensed engineer. However, Nationwide provides no foundation for this argument. In fact, as Mr. O'Leary testified at his deposition, his work is not considered the "practice of engineering" by the Board. As such, Mr. O'Leary need not be a licensed engineer to testify to the facts in his report.

Mr. O'Leary is not proffered as an engineering expert. His report is not proffered as engineering testimony. This case is distinguishable from *Bossier v. State Farm Insurance Co.*, 1:08-cv-408-LTS-RHW, 2009 WL 4061501 (S.D. Miss. Nov. 20, 2009) because Mr. O'Leary is not "testifying as an expert in the field of engineering," as Dr. Masters was in that case. 2009 WL 4061501 at *1. According to the Board, which has statutory authority[1] over the matter, a report such as the report at issue here does not amount to the "practice of engineering."

Because the Mississippi legislature gave the Board authority to regulate the practice of engineering, and because the Board has found that Mr. O'Leary is not practicing engineering when he addresses issues of causation and estimation of damages, the Board's interpretation of this Mississippi law is entitled to great weight. Pursuant to interpretation by the Board, Mr. O'Leary was not practicing engineering when he drafted his report. Therefore, the report in this case, which is very similar to the 2006 report, is

---

[1] The Mississippi legislature gave the Board statutory authority to regulate the practice of engineering in the state of Mississippi through investigation and disciplinary actions in Title 73, Chapter 13 of the Mississippi code (see, e.g., the Internet homepage of the Board, found at http://www.pepls.state.ms.us/pepls/web.nsf).

by definition not an engineering report, and Mr. O'Leary is competent to testify to his findings. Nationwide's Motion to Strike should be denied.

### C. Mr. O'Leary is not serving as a "mouthpiece" for engineers with whom he has consulted.

Nationwide complains that Mr. O'Leary is giving engineering testimony via licensed engineers while he himself is not a licensed engineer. This argument is misguided. Obviously, Mr. O'Leary cannot serve as a "mouthpiece" for licensed engineers because his report is not an engineering report. Further, Mr. O'Leary makes no attempt to hide or shield his consultants.

Mr. O'Leary makes no attempt to "bootstrap his opinions." He never hid the fact that he consulted with Mr. Moran, a licensed engineer. Mr. O'Leary's opinions are offered as damage estimates and causation opinions, which the Board has found do not constitute the practice of engineering. Mr. O'Leary merely discussed his conclusions with a person of a similar educational and employment background. This is not the practice of engineering just because Mr. Moran happens to be a licensed engineer. Based on his background, Mr. O'Leary need not be a licensed engineer to report his findings.

Mr. Moran, in his deposition, pointed out that a person producing a report such as Mr. O'Leary's does not have to be a licensed engineer. Specifically, Mr. Moran stated:

> Q: Are you aware that if one were to produce a report such as this for a litigation, is there a requirement that that person be a licensed engineer?
> A: No, not necessarily.
> Q: What – and then we talked about some of the window damage and water coming through windows, and all those questions that we talked about that you testified should be offered by a licensed engineer.
> A: Yes.
> Q: What type of engineer? Could an applied engineer offer those kinds of opinions?

7

> A: An applied engineer or a manufacturing engineer or a forensic engineer. People that have actually either conducted field tests or done design work in relationship to whether or not a component will withstand certain winds. And that can be either/or.

Deposition of Terry Moran, pp. 164-165, relevant portions of which are attached as Exhibit "D."

Mr. Moran's testimony is consistent with the clarification offered by Mr. O'Leary in response to the Board's requests in 2007. There Mr. O'Leary relied on his "experience and training" as an applied engineer by education and as a design or field engineer by trade (please see Exhibit B3, included in Exhibit B). For the report at issue, Mr. O'Leary relied on his experience and training. As Mr. Moran testified, this type of experience and training would enable Mr. O'Leary to make accurate judgments for his report. Nationwide's arguments that Mr. O'Leary will serve as a "mouthpiece" are unfounded.

### D. Mr. O'Leary's report is based on the evidence he had before him.

Nationwide complains that Mr. O'Leary's report is "divorced from all empirical reality." This is inaccurate. Mr. O'Leary's report was written with the evidence Mr. O'Leary had at the time. Compare the report of Nationwide's expert. Nationwide's expert, unlike Mr. O'Leary, had all of the evidence available to either party, yet still revised his report twice. Nationwide's contention that the first time should be the charm is disingenuous. Now that Mr. O'Leary has more evidence, he issued a more complete estimate. Nationwide's argument that Mr. O'Leary's report is at odds with the facts of this matter should be rejected. Further, Nationwide has an opportunity to question Mr. O'Leary about his revised findings.

Mr. O'Leary has completed his findings, and those estimates were e-mailed to counsel for Nationwide on Monday, January 11, 2010. Shortly thereafter, counsel for

Nationwide responded that Nationwide will not be questioning Mr. O'Leary about these revised estimates. Please see Exhibit "E." This is not a situation in which Insureds are attempting to ambush Nationwide at trial with different damage estimates. Insureds took responsibility for the need to have the estimates revised, and now offer Mr. O'Leary to speak to them. This has not disrupted the trial on this matter.

**III.    Conclusion**

Mr. O'Leary should not be prevented from testifying in this matter. He has no pecuniary interest in the outcome of this matter. His report is not an engineering report nor is he practicing engineering by producing it. His report is reliable. Mr. O'Leary cannot serve as a "mouthpiece" to licensed engineers because his report is not an engineering report. Finally, Mr. O'Leary's report is based on the evidence he had. It is not "divorced from all empirical reality" in this case simply because it requires revision. Nationwide's expert revised his report twice. Nationwide advocates for a needlessly stringent standard. As such, Nationwide's Motion to Strike Lewis O'Leary as Plaintiffs' Litigation Expert should be denied.

Respectfully submitted,

/s/ *Nathan M. Gaudet*
Nathan M. Gaudet (MSB 102608)
Matthew K. Brown (LA BAR (18571), T.A.
*Sullivan, Stolier & Resor, APLC*
909 Poydras Street, Suite 2600
New Orleans, Louisiana 70112
ngaudet@ssrlawfirm.com

**Attorney for plaintiffs, Sunquest Properties, Inc. & Carriage House Apartments Partnership**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has this date been electronically filed using the CM/EFC service which will notify counsel of record via electronic mail of this filing.

New Orleans, Louisiana, this 12th day of January, 2010.

/s/ *Nathan M. Gaudet*
Nathan M. Gaudet
