**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SUNQUEST PROPERTIES, INC. and**
**CARRIAGE HOUSE APARTMENTS**
**PARTNERSHIP,**                                                                            **PLAINTIFFS**

**v.**                                                                    **Civil Action No. 1:08-CV-687-LTS-RHW**

**NATIONWIDE PROPERTY AND**
**CASUALTY INSURANCE COMPANY**
**and JOHN DOES 1-5,**                                                                     **DEFENDANTS**

**REBUTTAL IN SUPPORT OF MOTION TO STRIKE LEWIS O'LEARY**
**AS PLAINTIFFS' LITIGATION EXPERT**

Not only have Plaintiffs failed to carry their burden of demonstrating the admissibility of

the opinion testimony of their proffered expert, Lewis O'Leary, but new evidence regarding prior

false testimony and misrepresentations to the Court has surfaced that only further confirms Mr.

O'Leary's unfitness to testify at the trial of this matter.

1.        *First*, leaving no doubt on the subject, Mr. O'Leary and Sunquest representative

Ralph Brockman have now expressly admitted the falsity of their prior testimony and Plaintiffs'

representations to the Court, acknowledging that ***Mr. O'Leary was operating under a***

***contingency fee arrangement at the time that he created his estimates and expert report***. (*See*

Jan. 19, 2010 Deposition of Ralph Brockman, *Sunquest Properties, Inc. & Compass Pointe*

*Apartments Partnership v. Nationwide Prop. and Cas. Ins. Co.*, 1:08-CV-692-LTS-RHW, at 37,

40 (explaining that Mr. O'Leary operated under contract entitling him to 4% of Plaintiffs' claim

until purportedly superseded by mid-litigation September 22, 2009 agreement) (Ex. 16)[1]; Jan. 15,

2010 Deposition of Lewis O'Leary, *Compass Pointe*, at 240 (discussing contract terms) ("Q.

---

[1]    Nationwide has yet to receive the final version of Mr. Brockman's deposition from the court reporter, and
therefore attaches the rough version to this pleading.  Exhibits 1-12 are attached to Nationwide's Motion to
Strike Lewis O'Leary as Plaintiffs' Litigation Expert.  Exhibits 16-21 are attached hereto.

And four percent of whatever the final award is, whether it's $1,000,000, $5,000,000, $10,000,000 or $20,000,000; correct?  A. Yes.") (Ex. 17); *id.* at 245 ("Q. But if there was an award of $10,000,000, you would get four percent; correct?  A. ***During that particular period of time there was a percentage agreement.***").); *id.* at 237-38 ("Q. And this represents the agreement that you had in place up until the lawyers told you you can't have this agreement; is that right?  A. That's right.  Q. And that took place sometime last fall, correct?  A. I think so.  Q. By 'last fall,' I mean September of 2009, correct?  A. That sounds about right.").)

       2.      As Mr. Brockman further admits, his prior sworn testimony on this point was untrue:

| Oct. 20, 2009 Deposition of Ralph Brockman *Carriage House v. Nationwide* at 173 (Ex. 18) | Jan. 19, 2010 Deposition of Ralph Brockman *Compass Pointe v. Nationwide* at 57 |
|---|---|
| ***Q. Well, prior -- did you have a different compensation arrangement with Mr. O'Leary prior to filing this lawsuit?***<br><br>***A. No.***<br><br>Q. So --<br><br>A. It's been the same all the way through.<br><br>Q. -- when you first began working with him at some point in 2007, it's always been on an hourly basis --<br><br>A. Yes.<br><br>Q. -- without any contingent --<br><br>A. … ***[T]he arrangement for payments was the same.  It was by the hour.*** | Q. I had asked you … did you have a different compensation arrangement with Mr. O'Leary prior to filing this lawsuit [and you] answer[ed] no.  Did I read all of that correctly?<br><br>A.  Yes.<br><br>***Q.  When you made that statement under oath that time that was untrue right Mr. Brockman?***<br><br>***A.  That's correct.***<br><br>[Court Reporter Rough Version] |

3.        Plaintiffs' attempt to secretly rebadge Mr. O'Leary's entitlement to receive a percentage of Plaintiffs' ultimate recovery—undertaken over two months after his expert report was submitted and just two weeks before his deposition in this matter—does not cure Mr. O'Leary's unfitness to serve as an expert in this matter.  Rather than fulfilling their discovery obligations by disclosing the contingent arrangement and documents evidencing it, Plaintiffs and Mr. O'Leary endeavored to shroud its existence, even after Plaintiffs' counsel *"realized" it "was not legal"* in September of 2009, over two months after Mr. O'Leary's expert report and estimates were completed.  (O'Leary Dep, *Compass Pointe*, at 255.)[2]  On July 17, 2009—while the contingency fee agreement was still unquestionably in effect—*Plaintiffs misrepresented to this Court that "Mr. O'Leary has no stake in the outcome of this matter."*  (July 17, 2009 Pls.' Mem. in Reply to Def.'s Resp. in Opp. to Pls.' Mot. for Appraisal of the Entire Loss or, in the Alternative, for a New Trial at 5 [Dkt 45].)  Instead of acknowledging that their litigation expert had reached his conclusions and written his expert report under the incentives of a contingency fee, *Plaintiffs' counsel "actually redid the contract" in the middle of litigation "to keep [Plaintiffs and Mr. O'Leary] out of trouble."*  (O'Leary Dep, *Compass Pointe*, at 238.)  None of this information was disclosed until after the close of discovery, in response to a motion to compel seeking previously withheld documents relating to this and other critically important issues in this case.  To the contrary, on September 22, 2009, the very same date that the "re-do" agreement was entered, Plaintiffs' counsel misrepresented to counsel for Nationwide that "all responsive documents relating to this Hurricane Katrina claim in Mr. Brockman's possession have been produced."  (Sept. 22, 2009 Letter N. Gaudet to L. Hill (Ex. 19).)

---

2    Emphasis added unless otherwise noted.

4.      Plaintiffs effectively ask this Court to permit contingent payments to be made through the back door by purporting to retroactively convert an entitlement to a percentage of the recovery into a capped hourly agreement—even after the contingent agreement has already been performed under.  Indeed, ***Mr. O'Leary not only reached his opinion and crafted his estimates in this matter under the incentive of a contingent recovery, but has been paid "advances" on his final contingency fee payment***.[3]  *See Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 446 (Miss. 1999) ("[t]he comment to Rule 3.4(b) [of the Mississippi Rules of Professional Conduct] provides that … ***it is improper to pay an expert witness a contingent fee***"); *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) ("The majority rule in this country is that an expert witness ***may not collect compensation which by agreement was contingent on the outcome of a controversy***.  That rule was adopted precisely to avoid even potential bias.").[4]

5.      ***Second***, Plaintiffs cannot change the dispositive fact that Mr. O'Leary lacks the Mississippi engineering licensure necessary to permit him to practice engineering in Mississippi by offering his opinion on causation and questions of scope that require engineering expertise and qualification.[5]  To begin, Plaintiffs grossly mischaracterize the letter that Mr. O'Leary

---

3    Contrary to Mr. O'Leary's report, (*see* June 29, 2009 ProBuilders Report of Findings at 6 (Ex. 2)), and to Plaintiffs' persistent claims that Mr. O'Leary "was always paid by the hour," (Dec. 16, 2009 Pls.' Mem. in Opp. to Mot. for Sanctions at 4 [Dkt. 226]), ***Mr. O'Leary has been issued multiple "milestone" payments as an "advance" on his entitlement to 4% of Plaintiffs' claim***. (*Compare* O'Leary *Compass Pointe* Dep at 246-47; *id.* at 251-52 ("Q. This invoice, that we're looking at here, does not show any kind of hourly component?  A. That -- that is correct.  It does not.  You're absolutely right."); *with* Jan. 12, 2010 Pls.' Mem. in Opp. to Mot. to Strike O'Leary as Litigation Expert at 2 [Dkt. 235] (misrepresenting that all payments to Mr. O'Leary have been "based on Mr. O'Leary's contract price of $200 per hour").)

4    Nationwide's pending Motion for Sanctions is further supported by Mr. Brockman's admission to lying under oath about Mr. O'Leary's contingency fee and Mr. O'Leary's testimony regarding Plaintiffs' efforts to hide this admittedly impermissible arrangement.

5    Certain scope determinations fall in the province of an engineering/causation expert rather than that of a mere estimator.  For example, Plaintiffs have claimed, without physical evidence or evidence of actual repairs, that substantial amounts of plywood roof decking and subflooring needed to be replaced due to saturation by rain water and purported resulting delamination.  (*See* ProBuilders Report at 4-5.)  Similarly, Mr. O'Leary asserts that some unidentified number of items of loss should have been but were not repaired by the subsequent buyers

received from the Mississippi Board of Licensure for Professional Engineers & Surveyors, which in no way "found that Mr. O'Leary is not practicing engineering when he addresses issues of causation." (Pls.' Mem. in Opp. to Mot. to Strike O'Leary at 6.)  In fact, the letter merely stated that Mr. O'Leary's "explanation [was] satisfactory."  (Feb. 28, 2008 Letter R. Brister to L. O'Leary (Ex. 20).)  As Mr. O'Leary himself explained, the report at issue was not an engineering report because it was developed for purposes of appraisal, in Mr. O'Leary's capacity as an appointed appraiser.  (*See* Jan. 25, 2008 Letter L. O'Leary to R. Brister (Ex. 21).)  To the extent the Board found anything entitled to deference from this Court, it is merely that ***appraisers***, as opposed to ***litigation experts in causation***, need not be engineers—a proposition that Nationwide does not contest.  (*See id.* (arguing that "[c]ommonly, engineers, contractors, adjusters, and attorneys are picked to serve as Appraisers" and that appraisal is an "informal process, requiring no special license or credentials").)

6.      Plaintiffs also misapprehend this Court's holding in *Bossier*, attributing to it a non-existent and nonsensical distinction between "causation" reports such as Mr. O'Leary's and "engineering" reports such as that purportedly at issue in *Bossier*.  (*See* Pls.' Memo. in Opp. to Mot. to Strike O'Leary at 6-7.)  This Court left no doubt that expert litigation reports and testimony addressing wind/water causation, or making any other determinations requiring "substantial engineering knowledge," may only be offered by a Mississippi-licensed engineer:

> This is a diversity action in which the substantive law of Mississippi applies.  The central issue in this action is whether the storm damage to the insured property, real and personal, was caused by wind (a covered loss within the policy's named peril, windstorm) or by storm surge flooding (a loss from an excluded peril).  Masters has been called to the stand to testify on this issue and to express the opinion reflected in his report, i.e. his opinion that the property damage in this instance was caused by storm surge flooding and not by wind.  This issue requires

---

of the property.  Determining whether such repairs were in fact required, and if so whether they were a result of wind damage, requires engineering expertise and licensure that Mr. O'Leary does not possess.

that substantial engineering knowledge be brought to bear concerning the insured
structure and the forces generated by the storm.

*Bossier v. State Farm Fire and Cas. Co.*, 1:08CV408-LTS-RHW, 2009 WL 4061501, at \*6 (S.D.

Miss. Nov. 20, 2009).[6]

      7.      ***Third***, Plaintiffs' arguments regarding Mr. O'Leary's admittedly unreliable

estimates do nothing to establish that his testimony can survive *Daubert* scrutiny.  Plaintiffs

baldly state that Mr. O'Leary's report is sufficiently reliable because, "[n]ow that Mr. O'Leary

has more evidence, he issued a more complete estimate."  (Pls.' Mem. in Opp. to Mot. to Strike

O'Leary as Litigation Expert at 8.)  Yet ***Plaintiffs' promises of a grossly out-of-time, mid-***

***January completion of new wind estimates for litigation purposes remain unfulfilled***.

Contrary to Plaintiffs' claim that the new estimates "completed [Mr. O'Leary's] findings," (*id.* at

8), according to Mr. O'Leary it is nothing more than a "preliminary," mixed wind/flood estimate

that he prepared for purposes of appraisal.  (*See* O'Leary Dep, *Compass Pointe*, at 24, 148.)[7]  In

fact, Mr. O'Leary admits that he still lacks "another set for the trial that's just wind only,"

because he "just ha[sn't] had time to mess with that."  (*See id.* at 146.)[8]  Given the admitted

---

[6]    Plaintiffs appear to misapprehend Nationwide's argument regarding the fact that Mr. O'Leary had his report reviewed by licensed engineers.  As Plaintiffs do not argue that this fact somehow legitimizes his report, the point appears to be moot.

[7]    As Plaintiffs' counsel agreed at Mr. O'Leary's deposition, the fact that these estimates were created for purposes of appraisal only confirms that Nationwide was correct in declining Plaintiffs' disingenuous invitation to question Mr. O'Leary in detail regarding these new estimates. (*See* O'Leary Dep., *Compass Pointe*, at 241-42 ("Mr. Schultz: And so, with that understanding, Nathan, you'd agree we're not going to go into discussion of those?  Mr. Gaudet: Absolutely.").)

[8]    *See also id.* at 148-49 ("Q. Okay.  And am I correct that for Carriage House those new estimates are the same thing, they're wind and flood?  A. Yes, sir.  Q. Okay.  And those too are also for the appraisal process?  A. Yes, sir.  Q. And if you wanted to present something to the court or to the jury that was solely wind damage, you'd have to deconstruct your newest ones in some way to break out wind versus flood?  A. Yes, sir.  ***Q. Do you have a plan to do that?  Have you been asked to do that?  A. It's something that's on the list of things to do.  Yes, sir.  Q. But as we sit here right now you don't have that?  A. No, sir.***").

unreliability of the estimates submitted as part of Mr. O'Leary's litigation report,[9] and the utter

lack of any new estimate that segregates wind damage from flood damage and other uncovered

items of loss, Plaintiffs simply cannot establish that Mr. O'Leary's opinion as to causation,

scope, or estimation in this matter meets the *Daubert* threshold.  With trial quickly approaching,

and even Plaintiffs' own imagined two-month discovery deadline extension having passed

without a valid wind estimate, it is apparent that Mr. O'Leary should be stricken and summary

judgment granted in favor of Nationwide in this matter.[10]

       8.     For all of the foregoing reasons, the Court should preclude Mr. O'Leary from

serving as a litigation expert in any capacity in the trial of this matter.

     THIS, the 22nd day of January, 2010.

> Respectfully submitted,
>
> NATIONWIDE PROPERTY & CASUALTY
> INSURANCE COMPANY, DEFENDANT
>
> By Its Attorneys
> WATKINS LUDLAM WINTER & STENNIS, P.A.
>
> By:    /s/ Laura L. Hill
>         LAURA L. HILL
>         lhill@watkinsludlam.com

---

[9] *See, e.g.*, Oct. 6, 2009 Deposition of Lewis O'Leary, *Carriage House v. Nationwide*, 1:08-CV-LTS-RHW-687, at 89 (Ex. 3) (admitting that without the extensive materials he lacked, he "was operating half blind"); *id.* at 95 ("Well, the one glaring thing that's not on this list is the stuff that I'm now being provided with that I consider critical in having a balanced view on a case."); Nov. 4, 2009 Deposition of Jerry Wiggins at 144 (admitting that he would not "feel comfortable relying on the estimates") (Ex. 15); Nov. 24, 2009 Pls.' Opp. to Mot. to Preclude Lewis O'Leary and Jerry Wiggins from Presenting Evidence or Test. at 2 [Dkt. 200] (admitting that "Plaintiffs are not in compliance with the Court's orders" and that O'Leary and Wiggins needed to "substantially revise their expert conclusions").

[10] As Nationwide explained in its summary judgment briefing, Plaintiffs lack any record evidence to establish damages, a necessary element of their claim.  (*See* Mem. in Supp. of Mot. for Summ. J. at 11-13 [Dkt. 221]; Reply in Supp. of Mot. for Summ. J. at 2-5 [Dkt. 237].)  That even Plaintiffs' new, out-of-time estimates fail to provide even the possibility of constituting the missing record evidence confirms that summary judgment is appropriate.

H. Mitchell Cowan (MSB No.7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS  39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Thomas A. Clare, P.C. (Bar No. 44718)
Christian D. H. Schultz (Bar No. 44747)
Robert B. Gilmore (Bar No. 44997)
Kate S. O'Scannlain (Bar No. 45034)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Telephone:  (202) 879-5000
Facsimile: (202) 879-5200

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

> Nathan M. Gaudet
> Matthew K. Brown
> SULLIVAN, STOLIER AND RESOR, APLC
> 909 Poydras Street, Suite 2600
> New Orleans , LA 70112
> 504/561-1044
> Fax: 504/561-8606
> ngaudet@ssrlawfirm.com
> mbrown@ssrlawfirm.com

This the 22nd day of January, 2010.

> By:    /s/ Laura L. Hill
> LAURA L. HILL
> lhill@watkinsludlam.com