IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUNQUEST PROPERTIES, INC. and
CARRIAGE HOUSE APARTMENTS
PARTNERSHIP,                                                                    PLAINTIFFS

v.                                               Civil Action No. 1:08-CV-687-LTS-RHW

NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-5,                                                              DEFENDANTS

**MOTION TO STRIKE PLAINTIFFS' EXPERT'S SUPPLEMENTAL MATERIALS**

Nearly seven months after the Court's deadline for designation of experts, more than two months after the close of discovery, and less than three months prior to the start of trial in this matter, Plaintiffs have submitted totally revised damage estimates from one of their testifying experts, Lewis O'Leary. Mr. O'Leary's newest estimates arise not from any new facts or developments but due to his complete failure to consider a wealth of photographs and engineering reports that Nationwide produced to Plaintiffs months before Mr. O'Leary prepared his original June 2009 estimates and report. This failure led Mr. O'Leary to concede at his October 6, 2009 deposition that his original report was wholly unreliable. Plaintiffs have no excuse for their flagrant disregard of this Court's scheduling order, and their attempt to ambush the Defendant with brand new damage estimates would be highly prejudicial. Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") therefore files this Motion to Strike Plaintiffs' Expert's Supplemental Materials. In support of its motion, Nationwide states the following:

1.      Plaintiffs' expert designation deadline was June 30, 2009. On that date, Plaintiffs served their expert disclosures and identified Mr. Lewis O'Leary (among others) as a testifying expert. Plaintiffs provided a report from Mr. O'Leary addressing his opinion of the cause, scope,

and calculation of Plaintiffs' purported damages stemming from Hurricane Katrina, and estimates prepared by Mr. O'Leary's assistant, Jerry Wiggins, that form the basis for Mr. O'Leary's damages calculation. (*See* June 30, 2009 Pls.' Combined Expert Disclosure [Dkt. 40].)

2. On August 7, 2009, Nationwide served its own expert disclosures. (*See* Designation of Experts by Def. Nationwide Prop. & Cas. Ins. Co. [Dkt. 65].)

3. On October 6, 2009, Nationwide deposed Mr. O'Leary. At his deposition, Mr. O'Leary declined to stand by the estimate of wind damage included in his report, admitting that he had not considered a wealth of information that Nationwide had compiled just after Hurricane Katrina and timely produced to Plaintiffs. (*See, e.g.*, Oct. 6, 2009 Deposition of Lewis O'Leary, *Carriage House v. Nationwide*, 1:08-CV-687-LTS-RHW, at 95 ("Well, the one glaring thing that's not on this list is the stuff that I'm now being provided with that I consider critical in having a balanced view on a case.")(Ex. 1).) Rather, as Nationwide has detailed in other pleadings, Mr. O'Leary testified at length that his estimate was based on incomplete information and could not be relied upon at trial. (*See, e.g., id.* at 89 (admitting that without the extensive materials he did not consider, he "was operating half blind").)

4. On November 4, 2009, Nationwide deposed Jerry Wiggins. As Mr. Wiggins testified, he personally completed the estimates, which Mr. O'Leary subsequently adopted, without any input or contribution from O'Leary other than the instruction to rely on the causation and scope determinations made by Plaintiffs' public adjuster, WorldClaim. (*See* Nov. 4, 2009 Deposition of Jerry Wiggins, *Carriage House v. Nationwide*, 1:08-CV-687-LTS-RHW, at 176 ("Q. The meeting that you had with Mr. O'Leary, the determination made by you and him was that the WorldClaim estimate would be the basis for your estimate; is that correct? A. Right. Q. Beyond that, did you have any conversation with Mr. O'Leary regarding the items that you

added to the WorldClaim estimate? A. I don't recall discussing that with him. That was my job.")(Ex. 2).)[1] As Mr. Wiggins testified, in light of the fact that he "just got a wealth of information from [Plaintiffs' counsel]," (*id.* at 54), he would not "feel comfortable relying on the estimates" that he had created and that Mr. O'Leary had included in his expert report, (*id.* at 144).

5. On November 16, 2009, discovery in this case closed.

6. More than a week ***after the close of discovery*** — on November 25, 2009 — Plaintiffs sought the Court's permission to redo Mr. O'Leary's damages estimates entirely. (*See* Nov. 25, 2009 Mot. for Ext. of Time to Complete Disc. and Supplemental Expert Reports [Dkt. 201].) To date, this Court has yet to rule on this Motion.

7. On January 11, 2010, only four days before Mr. O'Leary was to be deposed in Plaintiffs' lawsuit against Nationwide relating to their Compass Pointe property, Plaintiffs produced what they claimed were revised "wind-only" estimates from Mr. O'Leary and Mr. Wiggins that had been prepared for the purposes of litigation damages assessment. (*See* Jan. 11, 2010 Email from N. Gaudet to K. O'Scannlain and L. Hill (Ex. 3).) At his January 15, 2010 deposition, however, Mr. O'Leary testified that these revised estimates encompassed both wind and flood damage and ***had been put together for purposes of the appraisal process*** (pending the

---

[1] In complete contradiction to Mr. Wiggins's testimony, Mr. O'Leary testified that he had "[a]t least 40 if not 60" conversations with Mr. Wiggins regarding the production of the Carriage House estimates. (*See* O'Leary Dep., *Carriage House*, at 146.) This is just one of numerous glaring inconsistencies between Mr. Wiggins's testimony that he did all the estimating work on his own, and Mr. O'Leary's claims to have controlled the process. *See, e.g., infra* page 3 n.2; (*compare* Wiggins Dep., *Carriage House*, at 202 ("Q. And it was, ultimately, your decision whether or not to include a given item in this estimate, correct? A. Yes. Well, in the WorldClaim. Q. Right. Other than -- putting aside the WorldClaim numbers, which you used as a basis? A. Right."), *with* O'Leary Dep., *Carriage House*, at 136-37 ("Q. Who is deciding how a blank was going to be filled in? Was that -- A. That was my job. … Q. And then Mr. Wiggins, what was his role, simply to input the figure in the Xactimate system? A. Yes, sir."); *compare* Wiggins Dep., *Carriage House*, at 208-209 ("Q. Did you, at any point, take one of the WorldClaim building estimates and mark up that estimate, use it as a basis for your Xactimate entries? A. No, sir."), *with* O'Leary Dep., *Carriage House*, at 153 ("A. We took a World Claim's estimate -- … -- and marked the heck out of it. … Q. When you say you took the World Claim estimate and marked it up, you literally took a hard copy and with a pen -- A. Yes, sir. Q. -- wrote changes on it? A. Yes, sir.").)

3

Court's resolution of Nationwide's requests to preclude Mr. O'Leary's involvement in that process). (*See* Jan. 15, 2010 Deposition of Lewis O'Leary, *Compass Pointe v. Nationwide,* 1:08-CV-692-LTS-RHW, at 145-147 (Ex. 4).) As of his January 11, 2010 deposition, Mr. O'Leary maintained that he no longer stood behind his original June 2009 estimates and report, but still had not prepared revised wind-only estimates for the litigation. (*See id.*).

8. On January 25, 2009 — ***almost seven months after*** their expert designations deadline, ***more than two months after*** the close of discovery, and less than three months prior to the start of trial in this matter, Plaintiffs submitted yet another round of supplemental estimates that they claim now encompass Mr. O'Leary's revised wind-only estimates. (*See* Jan. 25, 2010 Email from N. Gaudet to K. O'Scannlain and L. Hill (Ex. 5).) These revised estimates are massive in size, totaling more than eighteen hundred pages. Remarkably, the revised estimates have literally thousands of line item changes and ***differ by almost two million dollars*** from Mr. O'Leary's original estimates. His changes are so extensive that in addition to the hundreds of items either removed or added, the substantial majority of the entries carried over from the original estimates now differ in unit price, quantity, or both. Moreover, the revised estimates are based in part on conversations with previously undisclosed individuals.

9. As the indisputable facts recited above demonstrate, Plaintiffs' out-of-time request for a second (if not third) chance at creating a viable expert wind estimate outside of the discovery period flies directly in the face of the Court's scheduling order. Just as Nationwide predicted, Plaintiffs' failure even to meet their own self-appointed mid-January deadline, combined with the fact that the parties have just completed depositions in the parallel *Compass Pointe* matter, make clear that Plaintiffs' proposed discovery extension to January 31, 2010 was an unachievable fantasy.

4

10. The Court should not countenance this flouting of the Court's discovery schedule. In other cases, this Court has refused to allow major "supplementation" — let alone what Plaintiffs themselves admit to be a "substantial[] revis[ion]" (Nov. 24, 2009 Opp. to Mot. to Preclude Lewis O'Leary and Jerry Wiggins from Presenting Evidence or Test. at 2 [Dkt. 200]) — of expert reports by plaintiffs after the expert has been deposed. *See, e.g.*, Jan. 30, 2008 Mem. Op. and Order Granting Def.'s Mot. to Strike Donald Dinsmore as an Expert Witness and to Strike the Supplemental Report of Stephen Wistar, *Espinosa v. Nationwide Mut. Fire Ins. Co.*, No. 1:06CV-LTS-RHW (S.D. Miss.) [Dkt. 151] (Ex. 6). Indeed, the Court has denied such requests even when the proposed supplement comes *within* discovery deadlines, observing that such surprises are not fair to the defendant. *See Ross v. Metro. Prop. & Cas. Ins. Co.*, No. 1:07CV521, 2008 WL 4793807, at *2 (S.D. Miss. Nov. 3, 2008) (unpublished); *Sanders v. Nationwide Mut. Fire Ins. Co.*, No. 1:07CV988, 2008 WL 5095992, at *2 (S.D. Miss. Nov. 24, 2008) (unpublished); *Dickinson v. Nationwide Mut. Fire Ins. Co.*, No. 1:06CV198, 2008 WL 2568139, at *2 (S.D. Miss. June 24, 2008). (unpublished).

11. Permitting Plaintiffs to submit revised damage estimates at this stage in litigation unduly prejudices Nationwide. First, Nationwide would need to re-open the depositions of Messrs. O'Leary and Wiggins. Next, at his January 26, 2010 deposition in the *Compass Pointe* matter, Mr. Wiggins identified additional, previously undisclosed witnesses, one of whom provided information that materially altered the revised Carriage House estimates. (*See* Jan. 26, 2010 Deposition of Jerry Wiggins, *Compass Pointe v. Nationwide,* 1:08-CV-LTS-RHW, at 35 (identifying Curt Inman and Carlo Pelfrey as persons whom Mr. Wiggins interviewed in connection with Carriage House) (Ex. 7); *id.* at 47 (explaining that information from Mr. Pelfrey caused Mr. Wiggins to allow for replacement of all windows).) Thus, Nationwide also would need to depose Messrs. Inman and Pelfrey. Finally, Nationwide's own experts would need to

have the opportunity to review and potentially respond to these new damage estimates, which would require an additional round of revised expert reports and likely deposition as well.

12. The interests of judicial economy require the same result. This court is justifiably wary of "the dangerous precedent that would be set" if it became "common custom" to leave "a case's management . . . to the parties' devices," such as Plaintiffs' self-appointed discovery extension. *Payment v. State Farm Fire & Cas. Co.*, No. 1:07CV1003, 2008 WL 4793715, at *2 (S.D. Miss. Oct. 27, 2008) (unpublished). *See also Politz v. Nationwide Mut. Fire Ins. Co.*, No. 1:08CV18, 2009 WL 169171, at *2 (S.D. Miss. Jan 26, 2009) (unpublished) ("No matter how many guises are used . . . delay is the unavoidable result. This should not be the case this far into Hurricane Katrina litigation. The Court's procedures and rulings should be familiar, and there is no reason why Plaintiff's counsel can not comply with them."). In other cases where parties have filed pleadings "on their own and contrary to the scheduling order deadline," this Court has found "no alternative but to strike" those pleadings. *Vaz v. Allstate Prop. & Cas. Ins. Co.*, No. 1:06CV935, 2006 WL 3102990, at *2 (S.D. Miss. Oct. 31, 2006) (unpublished).

13. Plaintiffs, themselves sophisticated corporate entities familiar with litigation, made an untimely request for a second chance to re-do their expert case long after the close of discovery and to correct a problem solely of their own making. Their dilatory conduct and failure to comply with the Court's scheduling order has already inflicted substantial prejudice and expense on Nationwide. Combined with Plaintiffs' out-of-time production of thousands of pages of clearly responsive, previously withheld documents, it is apparent that Plaintiffs' failures to comply with the Court's scheduling orders require a virtual restarting of discovery. The Court should strike these new estimates to forestall the additional delay, expense, and prejudice that they entail.

14. Should the Court permit these new reports to become part of the record in this matter, Nationwide is entitled to re-depose both Mr. O'Leary and Mr. Wiggins regarding these estimates, as well as to provide Nationwide's own experts with these materials for review, revised reports, and potentially additional depositions. Moreover, Nationwide is entitled to depose Messrs. Inman and Pelfrey. Finally, Nationwide requests that any additional discovery regarding Mr. O'Leary's revised estimates and expert report be borne by the Plaintiffs, including any and all reasonable attorneys' fees and expenses.

15. Due to the nature of this Motion, in which all pertinent legal authorities have been set forth fully herein, Nationwide respectfully requests that the Court waive its usual requirement of a separate memorandum of authorities under Uniform Local Rule 7.2(D).

16. In support of its Motion, Nationwide attaches and incorporates by reference the following exhibits:

| | |
|---|---|
| Exhibit 1: | Oct. 6, 2009 Deposition of Lewis O'Leary |
| Exhibit 2: | Nov. 4, 2009 Deposition of Jerry Wiggins |
| Exhibit 3: | Jan. 11, 2010 Email from N. Gaudet to K. O'Scannlain and L. Hill |
| Exhibit 4: | Jan. 15, 2010 Deposition of Lewis O'Leary, *Compass Pointe v. Nationwide,* 1:08-CV-LTS-RHW |
| Exhibit 5: | Jan. 25, 2010 Email from N. Gaudet to K. O'Scannlain and L. Hill |
| Exhibit 6: | Jan. 30, 2008 Mem. Op. and Order Granting Def.'s Mot. to Strike Donald Dinsmore as an Expert Witnes and to Strike the Supplemental Report of Steven Wistar, *Espinosa v. Nationwide Mut. Fire Ins. Co.,* No. 1:06CV-LTS-RHW (S.D. Miss.) |
| Exhibit 7: | Jan. 26, 2010 Deposition of Jerry Wiggins, *Compass Pointe v. Nationwide,* 1:08-CV-LTS-RHW |

WHEREFORE, PREMISES CONSIDERED, Nationwide respectfully requests that its Motion be granted and that the Court enter an order striking Plaintiffs' expert's supplementary report.

THIS, the 4th day of February, 2010.

        Respectfully submitted,

        NATIONWIDE PROPERTY & CASUALTY
        INSURANCE COMPANY, DEFENDANT

        By Its Attorneys
        WATKINS LUDLAM WINTER & STENNIS, P.A.
        By:    /s/ Laura L. Hill
              LAURA L. HILL
              lhill@watkinsludlam.com

H. Mitchell Cowan (MSB No. 7734)
Laura Limerick Gibbes (MSB No. 8905)
F. Hall Bailey (MSB No. 1688)
Janet D. McMurtray (MSB No. 2774)
Christopher R. Shaw (MSB No. 100393)
Laura L. Hill (MSB No. 102247)
WATKINS LUDLAM WINTER & STENNIS, P.A.
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, MS 39205
Telephone: (601) 949-4900
Facsimile: (601) 949-4804

Of Counsel:
Daniel F. Attridge, P.C. (Bar No. 44644)
Thomas A. Clare, P.C. (Bar No. 44718)
Christian D. H. Schultz (Bar No. 44747)
Robert B. Gilmore (Bar No. 44997)
Kate S. O'Scannlain (Bar No. 45034)
Jeffrey A. Todd (Bar No. 45916)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

## **CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing using the Court's ECF system, which sent electronic notification of such filing to:

>Nathan M. Gaudet
>Matthew K. Brown
>SULLIVAN, STOLIER AND RESOR, APLC
>909 Poydras Street, Suite 2600
>New Orleans , LA 70112
>504/561-1044
>Fax: 504/561-8606
>ngaudet@ssrlawfirm.com
>mbrown@ssrlawfirm.com

This the 4th day of February, 2010.

>By:   /s/ Laura L. Hill
>           LAURA L. HILL
>           lhill@watkinsludlam.com