UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SUNQUEST PROPERTIES, INC.**   **PLAINTIFF**

V.   **CIVIL ACTION NO.1:08CV687 LTS-RHW**

**NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY**   **DEFENDANT**

**MEMORANDUM OPINION**

The Court has before it Nationwide Property and Casualty Insurance Company's (Nationwide) Motion for Summary Judgment [218].

Nationwide asserts it is entitled to a summary adjudication that its current evaluation of the plaintiff's covered loss is accurate as a matter of law. Nationwide asserts the plaintiff has been unable to produce any substantial admissible evidence to put Nationwide's current damage evaluation in controversy as a factual issue. In bringing this motion, Nationwide shoulders the burden of demonstrating there is insufficient evidence in this record to create an issue of fact on this point and Nationwide is entitled to judgment on this issue as a matter of law. Since the question of coverage–and hence liability for covered damages–is uncontested, Nationwide's motion covers the central remaining issue in this litigation.

The insured property is an apartment complex comprised of eighteen buildings. The property is located at 1625 Martin Bluff Road, Gautier, Mississippi. This property was insured under a Nationwide Business Provider Policy (policy number 6323 BP 139742 0004) providing coverage limits of $5,345,258 for the structures, business personal property, and loss of business income in accordance with the terms of the policy. The policy contains a flood exclusion and an exclusion for "Consequential Losses."

During Hurricane Katrina the first floors of the insured buildings were flooded to a depth of between 18 and 35.5 inches. In addition, the storm caused substantial roof damage. Some of the exterior walls in the complex collapsed. A team of Nationwide adjustors inspected the complex shortly after the storm.

On September 26, 2005, Nationwide accepted the initial estimates of covered damage from its adjustors' inspections and paid the insured $124,776 for two months' lost rental income and $245,450.04 for wind damage to the exterior of the property, all calculated in accordance with the policy terms concerning depreciation and loss deductibles.

In October 2005, an engineer Nationwide engaged through National Forensic Consultants began an inspection of the insured property.  This inspection was completed on December 20, 2005.  This inspection confirmed the presence of flood damage (to an estimated depth of 31.5 inches) and concluded that storm winds damaged the roof and allowed wind-driven rain to enter the buildings and damage interior surfaces on the first and second floors of the buildings.

The Nationwide adjustors' on-going inspection of interior damage determined there was wind damage to the roof, roof decking, end walls, ceilings, insulation, drywall, and upper level baseboards, doors, trim, carpet, and fixtures.  The adjustors estimated the depth of flood waters to be approximately 32 inches.

Based upon the engineer's report and upon the adjustors' report, Nationwide paid an additional $470,888.90 for the losses described in these reports.  In addition, Nationwide paid $249,522 for four more months' lost rental income.  This additional payment was based on a Nationwide estimate that six months would be required to repair the covered storm damage.

Plaintiff started repair work in January 2006.  Plaintiff hired the public adjusting firm WorldClaim, P.A., to prepare an estimate of the damage to the insured property.  On April 27, 2006, WorldClaim provided a copy of its report to Nationwide.  On May 1, 2006, Jim Briggs (Briggs), a Nationwide representative re-inspected the property and observed repair work in progress.  During his re-inspection, Briggs learned the Plaintiff was in the process of negotiating a sale of the insured property to Antebellum, LLC.

Upon Briggs' observation that repairs and renovations to the insured property were nearly complete, Nationwide paid the plaintiff an additional $107,892.88, a sum it had withheld pending repair or replacement of the insured property.  Having paid a total of $1,232,954.77, Nationwide considered the plaintiff's claim closed, and there matters stood for the next two years.

In June and July 2008, the plaintiff demanded appraisal of the covered loss under the terms of the Nationwide policy.  The parties could not agree on the terms under which an appraisal could proceed, and the plaintiff then filed this lawsuit.

After suit was filed, Nationwide engaged another engineer, Jim Skees (Skees), and a damage valuation expert, Robert Martin (Martin), to review the evidence concerning storm damage to the insured property.  Based on Skees's engineering report, Martin estimated the actual cost value of the wind-related storm damage to be $1,118,609.60 (including overhead and profit).  Pursuant to Martin's estimate, on October 27, 2009, Nationwide paid the plaintiff an additional $179,363.71.

As discovery progressed in this litigation, facts came to light indicating that Martin's estimate may not have been accurate.  Nationwide asked Martin to review his findings, and, as a result of this review Martin revised his original damage estimate

($1,118,609.60) to $1,216,181.11 (again including overhead and profit).  This led Nationwide to pay the plaintiff an additional $109,579.25 on November 17, 2009.

On November 25, 2009, approximately ten days after the close of the discovery period, the plaintiff filed a motion to extend the discovery period to allow the completion of expert depositions and the supplementation of expert reports.  Plaintiff's original damage estimates provided by its experts, Lewis O'Leary (O'Leary) and Jerry Wiggins (Wiggins), were inconsistent with the evidence developed during discovery, particularly the materials generated by Nationwide's adjustors during their inspection soon after the storm.  Nationwide contends these materials were furnished to the plaintiff at the outset of this litigation, but O'Leary testified he only saw the materials months later, on the day before his deposition.  Wiggins testified his original estimate was inaccurate because it did not take into consideration these same materials.

Nationwide's motion is based upon the fact that the new information invalidated the opinions and conclusions of the plaintiff's expert witnesses.  Nationwide asserts that because the new information developed during discovery undermines the plaintiff's experts' estimates of damages, it should prevail as a matter of law.  Yet Nationwide has made no showing that these estimates were invalid in every detail, and the fact that these experts may find it necessary to rework their estimates, just as Martin twice found it necessary to rework his estimates, is not sufficient, in my view, to support the summary adjudication Nationwide is seeking.  Indeed, Nationwide has paid the plaintiff an additional $288,924.96 since this lawsuit was initiated.  In my view, this alone is sufficient to support the plaintiff's original allegation that Nationwide substantially underpaid this claim at the time Nationwide originally evaluated and adjusted the claim and closed its file.

While it is indeed commendable that Nationwide has, on more than one occasion,  undertaken to re-evaluate the plaintiff's claim and pay the additional sums it determined to be owed under the policy, as it is duty bound to do under Mississippi law, it does not follow that these payments, made during the pendency of this litigation absolve Nationwide of further legal liability as a matter of law.  In my view, there are factual issues whether Nationwide has paid all that is due under the policy, whether the plaintiff is entitled to any extra-contractual damages such as interest and attorneys' fees, and whether the later payments Nationwide made were timely and consistent with its duties under Mississippi law.  These issues preclude summary adjudication of the merits of this claim in favor of Nationwide, and, accordingly, its motion for summary judgment must be denied.

An appropriate order will be entered.

**DECIDED** this 19th day of February, 2010.

                                            s/ L. T. Senter, Jr.
                                            L. T. SENTER, JR.
                                            SENIOR JUDGE