UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SUNQUEST PROPERTIES, INC. AND**                                                    **PLAINTIFFS**
**CARRIAGE HOUSE APARTMENTS PARTNERSHIP**

**V.**                                                 **CIVIL ACTION NO.1:08CV687 LTS-RHW**

**NATIONWIDE PROPERTY AND CASUALTY**                                   **DEFENDANTS**
**INSURANCE COMPANY AND JOHN DOES 1-5**

### MEMORANDUM OPINION ON MOTIONS CONCERNING EXPERT WITNESSES

The Court has before it four substantive motions related to the expert witness testimony in this case.  Nationwide Property and Casualty Insurance Company (Nationwide) has filed a motion [194] to preclude the testimony of Plaintiffs' expert Lewis O'Leary (O'Leary), a motion [217] to strike the report and testimony of Plaintiffs' expert John Myers (Myers), a motion [222] to strike O'Leary as Plaintiffs' litigation expert, and a motion [246] to strike Plaintiffs' expert's supplemental materials.  Plaintiffs have filed a procedural motion [242] for leave to file a sur-rebuttal in opposition to the motion [222] to strike O'Leary, and Nationwide has filed a procedural motion [238] to strike three rebuttal memoranda [210] [231] [236].  The Court also has before it Plaintiffs' motion [201] for leave to supplement O'Leary's expert report and for an extension of time to allow a continuation of three depositions, those of Mr. Robert Martin (one of Nationwide's expert witnesses), Mr. Jerry Wiggins (Wiggins) (a consultant whose estimates O'Leary relied upon), and O'Leary.

### Motion [217] To Strike the Testimony of John Myers

Myers's report [40] reflects his opinion that there was a "landlord's market" for rental property in Jackson County, Mississippi, after Hurricane Katrina.  Myers opines that owners of residential rental properties who could quickly restore their properties to habitability "gained high occupancies, higher rents and waiting lists for tenants."  In this market, Myers further opines, the owners of such restored and habitable properties "gained the benefit of 100% occupancies at nearly double the rents as before the storm."

I am uncertain how this testimony is supposed to support Plaintiffs' claim for extra-contractual damages.  The insured buildings were not rebuilt for several months, and Plaintiffs sold the insured property about a year after the storm.  There is a suggestion in Plaintiffs' memorandum that the sale of the insured property might have been unnecessary had Nationwide been more prompt in making payments owed under its policy, but I do not understand how Myers's testimony is relevant to that contention.

The Nationwide policy covers the loss of business income:

> f. Business Income
> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from a Covered Cause of Loss.
>
> We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This additional Coverage is not subject to the Limits of Insurance.
>
> Business Income means the:
> (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> (2) Continuing normal operating expenses incurred, including payroll.

Nationwide has paid Plaintiffs six months' loss of rental income (in two installments) at a monthly rate of $62,388. I cannot ascertain from the record how this monthly sum was calculated, but I surmise there is a dispute between the parties concerning the amount "that would have been earned" during the relevant period immediately following the storm.

Since Plaintiffs claim benefits under the "Business Income" policy provision, they have the burden of proving the amount they are entitled to collect. If, as appears to be the case, Plaintiffs are attempting to prove that their loss of income should be calculated based on full occupancy and rental charges that would have been enhanced by the scarcity of similar housing on the market after the storm, Myers's testimony may be relevant to that issue. I say "may" because many other facts and circumstances also have a bearing on this theory of recovery, including the post-storm limitations on changes in rental charges under state law, the length of time that would have been necessary to effect appropriate repairs, and the question as to whether the payments Nationwide actually made were consistent with the relevant information Plaintiffs provided to Nationwide concerning their pre-storm net profits and their normal operating expenses they continued to incur.

Based on the record now before me, I cannot say, as a matter of law, that Myers's testimony is irrelevant to the facts in dispute in this proceeding. I am far more troubled by the lack of a specific factual foundation for Myers's opinion.

Myers's report indicates that his opinions concern "the general economic impact within the local market area of the [insured property] in the post Hurricane Katrina era." Myers states: "Many apartments suffered severe damage and consequently the supply

of apartment units available was cut by nearly 70% after Katrina." Myers "had been told" that apartments quickly restored to habitability generated "100% occupancies at nearly double the rents as before the storm." Myers does not disclose the sources of his information, and he does not disclose the methodology he followed in forming his opinions. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires, with respect to a witness who is specially retained or employed to give expert testimony: " . . . a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions. . . ."

While nothing in Myers's opinions is inconsistent with the facts generally known concerning the effect of the storm on the availability of local housing, it does not disclose the basis for these opinions, i.e. the data or other information considered by the witness in forming the opinions expressed in the report. In my view, the report does not comply with the disclosure requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure, and, in accordance with Rule 26.1(A)(2)(b) of the local rules of court I will grant Nationwide's motion [217] to strike Myers's report, and I will not permit Myers to testify.

### Motion [201] To Allow Supplementation of O'Leary's Expert Report and Motion [194] To Exclude O'Leary's Testimony Concerning Damages

In reviewing the record prior to ruling upon Nationwide's motion [218] for summary judgment, I learned that the discovery process has brought to light facts concerning the extent of covered damages that were known to neither Plaintiffs nor Nationwide at the time this suit was filed. I also learned there is a controversy concerning O'Leary's and Wiggins's access to photographs and other documents that were generated during Nationwide's adjustment of Plaintiffs' claim. Plaintiffs have not designated Wiggins as one of their expert witnesses, but O'Leary has identified Wiggins as one of the "consultants" O'Leary relied upon in forming his own opinions.

As a result of the way the Nationwide adjustment documents were handled (regardless of who was responsible for the delay in getting these documents into Wiggins's and O'Leary's hands), O'Leary's and Wiggins's opinions concerning the extent of covered damages are inaccurate because their opinions failed to take some of the facts disclosed in these Nationwide adjustment documents into consideration.

Plaintiffs' motion [201] presents the question how to deal with this situation in a way that is fair and equitable to both parties. Nationwide urges the Court to preclude O'Leary's testimony because his initial opinions are admittedly inaccurate; Plaintiffs ask the Court to allow O'Leary to supplement his expert opinions with revisions that take into consideration the Nationwide adjustment documents and other facts brought to light in the discovery process.

In my view, Plaintiffs' suggested course of conduct is more likely to result in a fair

adjudication of this dispute.  It is clear to me, from the materials I reviewed in considering Nationwide's motion for summary judgment, that Nationwide has put a great deal of effort into investigating and adjusting Plaintiffs' insured loss.  The loss involves substantial damage to eighteen buildings, and the evaluation of the loss both in amount and causation has been a substantial undertaking.  Nationwide has used not only its own adjustors but also engineers and outside experts to evaluate the covered damage in this case.  Because Nationwide began the adjustment process soon after the storm, the adjustment materials it compiled are the best currently available evidence of the condition of the property in the months immediately after the storm.

As I discussed in the [248] Memorandum Opinion dealing with Nationwide's motion for summary judgment, during this litigation Nationwide has twice learned, through the work of its own experts, additional relevant facts concerning the extent of covered damage the insured property sustained during Hurricane Katrina.  These discoveries led to Nationwide's making two substantial additional payments (one of $179,363.71 and one of $109,579.25) of benefits due under the policy at issue.

This action was filed on September 26, 2008, and the complaint has been once amended.  The answer to the amended complaint was filed on October 10, 2008.  Following the case management conference on November 24, 2008, the original scheduling order was entered.  The original scheduling order [6] required Plaintiffs to designate their expert witnesses by March 16, 2009, and required Nationwide to designate its experts thirty days later.  These dates were later extended by agreement of the parties.  On January 23, 2009, Nationwide served its initial pre-discovery disclosures, and Nationwide asserts that this is the date the Nationwide adjustment documents were given to Plaintiffs (and became available for O'Leary's perusal).

On April 24, 2009, Plaintiffs filed the first [28] of many pleadings and memoranda [29] [31] [34] [37] [38] [45] [94] [96] [129] [130] [131] [132] [166] [176] [189] [215] [224] [227] [229] [240] concerning the issue of appraisal.  While the appraisal issue was in controversy, the parties conducted extensive discovery, and the current controversy developed.

In order to afford both parties the opportunity to present the best available evidence concerning the extent of the covered loss, I will reopen discovery for both parties for a period of forty-five days after the appraisal report is finalized to allow supplementation of expert opinions concerning damage to the insured property and to permit depositions of all expert witnesses who render supplemental opinions.  All supplemental opinions must be served within two weeks after the final appraisal report is signed, and all expert depositions concerning the supplemental opinions rendered must then be completed within the following thirty days.

## MOTION [222] TO STRIKE O'LEARY AS AN EXPERT WITNESS

Nationwide has made a determined effort to exclude O'Leary from participating in this action on behalf of Plaintiffs. Nationwide has offered four reasons in support of its effort to disqualify O'Leary:

1. Nationwide has attacked O'Leary's qualifications, i.e. his knowledge, methodology and experience in evaluating property damage, under the holding of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993);

2. Nationwide has asserted that O'Leary lacks the impartiality expected of an individual who acts as an appraiser;

3. Nationwide contends O'Leary's testimony should be precluded because he is not an engineer licensed under Mississippi law; and

4. Nationwide has also asserted that O'Leary is being compensated for his services on a contingent fee basis.

**Alleged Contingent Compensation**: Plaintiffs insist that O'Leary is not being compensated on a contingent fee basis. The September 22, 2009, letter from Martin Brown to O'Leary confirming the arrangements between Plaintiffs and O'Leary calls for compensation at an hourly rate of $200 subject to a maximum total payment of $190,000. Under the terms expressed in this letter, none of O'Leary's compensation is contingent on Plaintiffs' recovery in this action.

While he was acting in the role of public adjustor, O'Leary accepted employment on a contingent fee basis. Under this arrangement, there was no recovery, and O'Leary did not collect any compensation that was contingent on the insured's recovery. When O'Leary began work as a litigation consultant, his contingent fee agreement was abrogated in favor of an arrangement with the insured that called for hourly compensation up to stated maximum limits, the terms set out in the September 22, 2009, letter. (Deposition of Ralph Brockman, pages 43 - 46)

Nationwide has the evidentiary burden of proving its allegation that O'Leary is working under a contingent fee arrangement. Nationwide has presented no evidence that the terms of the agreement covering O'Leary's services are not as they appear on the face of the September 22, 2009, letter. (See the September 22, 2009, letter from Plaintiffs' counsel to O'Leary) Nor has Nationwide offered any evidence that O'Leary collected or has a right to collect a contingent fee under his prior agreements with Plaintiffs. I therefore find that this basis for disqualifying O'Leary from further participation has not been proven.

**Impartiality as an Appraiser**: The appraisal provision in the Nationwide policy differs substantially from the more common appraisal provision, usually found in residential policies, that makes the findings of an appraisal final and requires prompt payment of the appraised sum. The more common provision makes appraisal a method of alternative dispute resolution similar to arbitration. But the Nationwide appraisal provision does not provide for the appraisers' rendering a final decision that Nationwide and Plaintiffs must honor and promptly follow. Instead, the Nationwide appraisal provision allows Nationwide to continue to defend the claim on its merits. The policy states:

> E.  PROPERTY LOSS CONDITIONS
>
> 2.  Appraisal
>     If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>     a.  Pay its chosen appraiser; and
>     b.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

I have previously determined that O'Leary is not subject to removal or disqualification as an appraiser except on a showing that he has a pecuniary interest in the outcome of the appraisal. As I stated above, the contract between O'Leary and Plaintiffs does not give O'Leary a contingent interest in the outcome of Plaintiffs' claim. Accordingly, I will not prevent O'Leary from testifying based upon his perceived lack of impartiality.

**Engineering Licensure**: Nationwide asserts that because O'Leary is not licensed as an engineer under Mississippi law, he should be disqualified as an expert witness. Plaintiff has responded by pointing out that O'Leary has not been proffered as an expert in the field of engineering. Plaintiff asserts that O'Leary's opinions on causation and damages are not engineering opinions and that he should not be disqualified on this basis. O'Leary does have some engineering education, but in his report he does not assert that his opinions are those of an engineer. O'Leary's opinions go to the issue of whether specified damage was caused by wind or by flooding and to the cost necessary to repair or replace the damaged property.

Plaintiffs have also provided the Court with correspondence (identified by an affidavit from O'Leary) between O'Leary and the Mississippi Board of Licensure for Professional Engineers and Surveyors (the Board). This correspondence took place in 2007 after an anonymous complaint was made to the Board accusing O'Leary of the unlicensed practice of engineering. The activity that gave rise to this anonymous complaint was O'Leary's having evaluated storm damage at a residence on the Mississippi Gulf Coast. I infer from this exchange of correspondence, in which the Board finds that the complaint was not substantiated, that the activity O'Leary engaged in was not regarded by the Board as his having practiced engineering without a license.

While O'Leary (or any other witness who is not a licensed engineer under Mississippi law) will not be permitted to testify on engineering matters or to express his opinion on any issue of engineering, it does not appear to me that O'Leary's evaluation of the covered loss in this case requires him to form and hold opinions on engineering issues. O'Leary will therefore be permitted to testify to his observation of the evidence (the physical condition of the insured property after the storm as disclosed by personal inspection or through photographs and other documents properly identified and authenticated) and the conclusions and opinions he has formed concerning the extent of the covered loss based on those observations. Like any other expert witness, O'Leary may rely on materials that are not in evidence and that are not admissible into evidence to the extent permitted by Rule 703 of the Federal Rules of Evidence.

**Qualifications as an Expert**: Nationwide asserts that O'Leary is unqualified to state an expert opinion concerning the extent of Plaintiffs' covered losses under the standard of *Daubert*. My review of O'Leary's testimony concerning his opinions does not suggest to me that O'Leary is unqualified. O'Leary has had extensive experience evaluating physical damage to insured property; his education and training appear to be sufficient to allow him to carry out this type of evaluation; and his methodology does not appear to be novel, unusual, or beyond his capability. While I will grant Nationwide a hearing on this aspect of its challenge to O'Leary's continued participation in this action, I do not find that Nationwide has established O'Leary's lack of qualifications at this juncture. For these reasons, I find that Nationwide has not presented sufficient evidence to establish that O'Leary should be precluded from further participation in this action as an expert witness.

### Conclusion

I will allow O'Leary (and the Nationwide damage expert if he chooses) fourteen days following the confection of the final appraisal report to supplement his opinions concerning the extent of the covered loss, and I will permit Wiggins to reconsider his own findings during this same time period should he wish to do so. I will allow an additional thirty days within which Nationwide may take O'Leary's and/or Wiggins's depositions concerning the supplementation of their opinions and the basis for that supplementation.

Should any of Nationwide's expert witnesses wish to supplement their opinions in light of the fact established during the discovery process, such supplementation (and subsequent deposition opportunities) shall be allowed on this same schedule.

I will defer the decision to schedule a formal hearing to ascertain whether O'Leary's qualifications and the methods O'Leary followed in formulating his expert opinions meet the standards established by the holding in *Daubert.*

I will deny Nationwide's motions to disqualify O'Leary from further participation in this litigation as an expert witness on behalf of Plaintiffs.

I will strike Myers's expert report, and I will not permit Myers to testify as an expert in this action.

Plaintiffs' motion for leave to file a sur-rebuttal brief [242] will be denied as moot, and Nationwide's motion [238] to strike Plaintiffs' three rebuttal memoranda [210] [231] [236] will also be denied as moot.

An appropriate order will be entered.

**DECIDED** this 26th day of February, 2010.

                                         s/ L. T. Senter, Jr.
                                         L. T. SENTER, JR.
                                         SENIOR JUDGE